**John Cripe, Appellee, v. Pevely Dairy Company, Appellant.**

Opinion filed June 4, 1934.

HENSLEY & HENSLEY, JUNE C. SMITH and HUGH V. MURRAY, JR., for appellant.

J. G. BURNSIDE, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

October 1, 1931, appellant, Pevely Dairy Company, hereinafter referred to as defendant, filed a complaint in the District Court of the United States for the Southern District of Illinois against John R. Pearce and a large number of other persons, including appellee herein, who is hereinafter referred to as plaintiff.

By said bill, defendant sought an injunction to restrain the defendants therein named from committing certain acts of violence growing out of a controversy between the plaintiff as a milk distributor in St. Louis and who purchased milk from producers in this State and the defendants who were milk producers residing in this State, plaintiff herein residing near Mulberry Grove in Fayette county.

October 10, 1931, a preliminary injunction was ordered restraining and enjoining the plaintiff herein and other parties named as defendants in said bill from

"1. Assaulting or threatening bodily injury to plaintiff's employees, or any of them, while engaged in transporting milk or cream to plaintiff's place of business in the City of St. Louis, Missouri.

"2. Assaulting or threatening bodily injury to any other person engaged in transporting milk or cream to plaintiff's place of business in St. Louis, Missouri.

"3. Destroying, injuring or taking possession of any milk or cream being transported to plaintiff's place of business at St. Louis, Missouri.

"4. Injuring or molesting any truck or milk containers being used in the transportation of milk or cream to plaintiff's place of business at St. Louis, Missouri.

"5. Assaulting or threatening bodily injury to any producer under contract to supply milk or cream to plaintiff until the further order of this court.

"It is further ordered that this preliminary injunction shall be binding upon persons who have knowledge of the contents and purport thereof."

Said injunction writ was served on plaintiff the same date of its issuance.

On the evening of October 13, following the issuance of said temporary writ a number of persons interested, on one side or the other of said milk controversy, gath-

ered in Mulberry Grove. There was to be a meeting for those farmers who were then selling milk to the defendant. Prior to the meeting, an altercation arose among some of the persons who had gathered in front of the building, where the meeting was to be held, and Melvin Stokes, a resident of that vicinity and who was present to attend the meeting, was struck a blow on the head.

The later part of October, the federal court, on a hearing relative to making said temporary injunction permanent, heard evidence of various acts of violence on the part of the several defendants in said injunction suit, including the assault on Stokes at Mulberry Grove. Witness Benefield testified that he saw the plaintiff strike Stokes and three other witnesses, all residents of Mulberry Grove, testified to a state of facts which if true would prove conclusively that the plaintiff was not the person that struck Stokes. No other evidence was heard in reference to said incident. Upon a consideration of all the evidence taken at said hearing, the court made the injunction permanent.

January 11, 1932, the defendant herein filed its petition or information in said federal court, alleging the facts averred in the original petition, the granting of temporary injunction on October 10, service of copy of said injunction and that one of the company's drivers, Melvin Stokes, who collects the milk from producers and delivers said milk to the dairy company at its place of business in Hagerstown in Fayette county, was on October 13 ''lawfully standing in the street of the town of Mulberry Grove, Illinois, waiting to attend a meeting of Pevely Dairy Company in said town, he was stopped and upbraided and abused by various people congregated in said street and warned to cease delivering milk to your informant's place as aforesaid that in the course of the argument, John Cripe, a defendant herein, stepped up beside said driver, Melvin Stokes, and hit him a vicious blow with

his fist on the side of the head.'' The petition was sworn to by said attorney, Robert T. Hensley. Accompanying said petition were three affidavits. The affidavit of Melvin Stokes was that he had been struck on the head and that someone told him that it was John Cripe. Herbert Wright and Henry Roe stated by their respective affidavits that they saw John Cripe strike Melvin Stokes on the right temple. On the filing of said petition and affidavits, the federal court entered the following order:

''This cause coming on to be heard upon the petition heretofore filed in said cause and upon affidavits attached thereto, charging that John Cripe is in contempt of the restraining order and preliminary injunction heretofore issued by this Court, in the case of Pevely Dairy Company, a Corporation, Plaintiff v. J. R. Pearce, et al., Defendants, the particulars of which said contempt are fully set forth in said petition and in the affidavits attached thereto:

''It Is Therefore Now Ordered That the Marshal of the United States for the Southern District of Illinois Southern Division, do forthwith apprehend the said John Cripe if he be found in his bailiwick and bring him before this Court, at Springfield, Illinois, in said Division, and District, there to be dealt with as the law may direct.

''On motion of the plaintiff in the above entitled cause, it is ordered by the Court that leave be and is hereby granted the said plaintiff to file a petition for contempt of Court against said John Cripe.''

Pursuant to this order, plaintiff was arrested on the following day by the United States marshal, taken to Springfield and lodged in jail. Plaintiff filed his answer to said petition and upon hearing on said petition and answer, defendant was discharged.

Plaintiff filed this suit in the circuit court of Fayette county to recover damages alleged to have grown out of malicious prosecution in the contempt case.

The declaration consisted of one count to which defendant filed a plea of general issue. Defendant filed three special pleas to which demurrer was sustained and defendant elected to stand on said pleas.

Two special interrogatories were submitted to the jury to which they answered that the defendant did not act upon the advice given to it by its attorney and file the complaint in good faith believing that the facts stated in said affidavits constituted probable cause and that the defendant did not at the time of filing the complaint and before the issuance of the warrant have probable cause to believe that plaintiff was guilty of violation of the injunction.

The grounds relied upon for reversal are, first, that appellee presented the facts to a reputable attorney and acted upon his advice, second, that the order entered by the federal court to show cause was an adjudication that there was probable cause for the issuance for the attachment and therefore binding upon the parties in this proceeding, third, that there is no evidence in the record to support the verdict by the jury that the defendant acted with malice and without probable cause.

Following the granting of the permanent injunction in the latter part of October, Mr. Graham's connection with the case was terminated for a time. Mr. Hensley testifies that he presented the affidavit of Stokes, Wright and Roe to Mr. Graham and that they were considered in connection with the evidence.

Robert T. Hensley of the law firm of Hensley & Hensley of St. Louis is the general attorney for the defendant and appeared on behalf of defendant in all steps of the injunction proceeding. Hon. James M. Graham of Springfield was the local attorney in the injunction matter. His services were terminated after the injunction had been made permanent and he was not re-employed until Mr. Hensley consulted with him relative to the contempt charges at which time there

was a discussion of the evidence on the Stokes incident, which had been introduced at the hearing in the federal court the latter part of October and the Stokes, Wright and Roe affidavits, above referred to, were considered. Mr. Hensley testified that Mr. Graham advised that on the facts and affidavits submitted there was probable cause for the filing of a petition charging plaintiff with contempt. Graham and Hensley then prepared and filed the petition. It is conceded in the record that Mr. Graham was a reputable lawyer and in good standing.

Defendant contends that since the facts upon which the warrant was issued were submitted to a reputable attorney and such attorney advised prosecution, this constituted probable cause and is an absolute defense to this suit.

The question in this case is not whether the plaintiff was actually guilty of the contempt charge, but whether the defendant acted in good faith in presenting the matter to its attorney. Under the facts of this case good faith on the part of the defendant raises the question of fact as to the diligence it exercised in ascertaining all the facts surrounding this incident. Did it before interviewing its attorney make such an investigation to determine the facts as an ordinarily prudent person would have made under the same circumstances? In *Anderson v. Friend,* 71 Ill. 475, the court said, "It is, of course, a question of fact, in such cases, whether the party has fairly communicated to his counsel the facts within his knowledge, and used reasonable diligence to ascertain the truth, as also whether he acted in good faith upon the advice received from counsel to be determined by the jury, from the evidence. *Ross v. Innis,* 26 Ill. 260, 277; *Ross v. Innis,* 35 Ill. 487, 505; *Wicker v. Hotchkiss,* 62 Ill. 107; *Collins v. Hayte,* 50 Ill. 337; *Ames v. Snider,* 69 Ill. 376."

There was a sharp conflict in the evidence introduced at the hearing on the permanent injunction and the affidavits submitted relative to the identity of the one who struck Stokes. Stokes was struck in the dark while in the midst of a crowd and under circumstances where it would be difficult to identify his assailant. There were a number of persons present but it does not appear that defendant interviewed any of them, other than Stokes, Wright and Roe and it does not appear that any investigation was made as to the character or standing of the witnesses who had testified in behalf of plaintiff. Whether the exercise of proper diligence on the part of the defendant required such investigation was a question for the jury. It could only become a question for the court when the evidence as to the good faith of the defendant in submitting the facts to its attorney should be so clear and undisputed that all reasonable minds must reach the same conclusion therefrom. There is evidence in this case from which the jury might rightfully have concluded that the defendant did not submit to its attorney all the facts that it knew, or such facts as it might have acquired had it exercised that degree of care and diligence required by law.

Defendant further contends that the federal statute provides that before an attachment for contempt can issue there must be a finding of the court that there is good cause shown for the issuance of the attachment and that it constitutes probable cause and is an absolute bar to the suit.

That part of the federal statute which is material here and under which the contempt proceeding was instituted is as follows, "In any case the court or a judge thereof may, For Good Cause Shown, by affidavit or proof taken in open court or before such judge and filed with the papers in the case, dispense with the rule to show cause, and may issue an attachment for the arrest of the person charged with contempt."

There is nothing in the wording of this order entered by the federal court that indicates that there was any finding that good cause was shown.

Plaintiff relies upon *Glenn v. Lawrence,* 280 Ill. 581, which was an action to recover damages for malicious prosecution instituted by John M. Glenn, editor of The Manufacturers' News against Andrew M. Lawrence, who was president and general manager of the Chicago Examiner. Lawrence had gone before a judge of the municipal court of Chicago and also before the criminal court of Cook county and swore to a complaint charging Glenn with criminal libel. The alleged libelous articles which had been published by Glenn in the News were set forth in the complaint. The trial court directed a verdict in favor of Lawrence on the grounds that the complaint with the libelous articles set forth having been submitted to a judge of a court of record constituted a showing of probable cause.

The Supreme Court distinguished between a complaint containing libelous articles and those cases where a complaint is filed charging a crime in the terms of the statute and where there would be facts in the knowledge of the prosecuting witness which would have to be proven. The court held that since the complaint contained all the facts, namely, the libelous articles, the issuance of the warrant by the court constituted probable cause. Recognizing the distinction between the two classes of complaints, the court said, ''The ordinary complaint that a criminal offense has been committed merely charges its commission substantially in the language of the statute creating the offense, and whether facts known to the defendant constitute probable cause is a subject of proof in a suit for malicious prosecution.''

Plaintiff cites in support of his contention *Lyons v. Kanter,* 285 Ill. 336, which was a suit to recover damages out of a malicious prosecution arising out of an

embezzlement charge. The court said, "The question of probable cause is one of fact, to be determined from the evidence without regard to the finding of the examining magistrate. Even if his finding were regarded as prima facie evidence, there was other evidence on both sides of the question and the judgment of the Appellate Court affirming that of the municipal court is final on the question."

It is our conclusion that under the authorities cited the order entered by the federal court ordering the attachment is not a bar to this suit.

Defendant's third contention is that there was probable cause for instituting the contempt charges and therefore no malice. It is the law that if there was probable cause, there could be no malice but it is also well settled that where it has been found that the prosecution was without cause, the jury may infer malice. *Krug v. Ward,* 77 Ill. 603; *Thompson v. Force,* 65 Ill. 370; *Chapman v. Cawrey,* 50 Ill. 512. Since it being our view that the jury was under the evidence warranted in finding that there was no probable cause, then it follows that the jury had the right to infer malice.

The defendant requested the court to submit to the jury seven special interrogatories. The court submitted two which substantially covered the same question as presented in the other interrogatories. The matter of giving special interrogatories is discretionary with the trial court and the refusal of the interrogatories submitted did not constitute an abuse of discretion.

Finding no reversible error, the judgment is affirmed.

*Judgment affirmed.*