**Alec Shatz, Appellee, v. Aaron K. Paul et al., on Appeal of Aaron K. Paul, Appellant.**

### Gen. No. 46,697.

First District, Second Division.
October 4, 1955.
Released for publication November 3, 1955.

Samuel J. Andalman, of Chicago, for appellant.

Collen, Kessler & Kadison, of Chicago, for appellee; Mark A. Greenhouse, of Chicago, of counsel.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an order for a temporary injunction entered in the Circuit Court of Cook County in accordance with the prayer of an amended complaint therein filed, and from the order of the court denying defendants' motion to strike the amended complaint. The injunction restrained the defendants from "suing out any writs of capias ad respondendum . . . based upon any invoices sold to them by A & S Supply Company, Inc., a corporation, and/or Lynn Pump Co., a corp."

The theory of the defendant appealing is that the amended complaint fails to state any ground for equitable relief and furnishes no foundation or justification for the issuance of an injunction.

Aaron K. Paul, Seymour Hirschfield and Harold Hirschfield, copartners, doing business as Empire Factors (defendants in the instant action for injunction), had previous to the instant suit filed four actions in the Circuit and Superior Courts of Cook County against Alec Shatz (plaintiff in the instant action), predicated upon fraud and deceit. In each of the suits it was alleged that the defendant therein had induced the plaintiffs to purchase and discount certain accounts receivable because of false representations and warranties made to them and upon which they relied. Each of the suits is based upon an invoice made to a different company.

Two of the suits were filed on August 10, 1954, one in the Circuit Court of Cook County and the other in the Superior Court of Cook County. On November 12th and November 22nd two other suits were filed in the Circuit Court of Cook County. At the time each of the complaints was filed the plaintiffs submitted an affidavit for the procuring of an order for the issuance of a capias ad respondendum, and in pursuance of such

order and capias the defendant was attached and he posted bail. The aggregate amount of the invoices in the four cases is $6,194. The aggregate amount of the bail posted by defendant is $13,000. The defendant had filed a motion to strike these complaints, which motion has not been heard.

On March 10, 1955 Alec Shatz (hereafter referred to as plaintiff) filed an amended complaint for injunction in the Circuit Court of Cook County against Aaron K. Paul, Seymour Hirschfield and Harold Hirschfield, co-partners, doing business as Empire Factors (hereafter referred to as defendants), alleging that plaintiff, as an officer of the Lynn Pump Company and the A & S Supply Company, had presented invoices of the corporations to the defendants for the purpose of discounting the same; that on March 23, 1953 both corporations had filed voluntary petitions in bankruptcy, scheduling the defendants as creditors; and fully and in detail set out the filing of the four suits with affidavits by the defendants for the issuance of the writ of capias ad respondendum. It was further alleged that the plaintiff had been arrested in the four separate actions, had posted bail, and on one occasion had been compelled to spend a night in jail; that the defendants have in their possession some six invoices due and owing from the bankrupt corporations to the defendants, and that the defendants, through their agents and attorneys, threatened to file a separate suit on each and every invoice and secure writs of capias ad respondendum and compel the plaintiff to post bond for his release; that the defendants had no reason to believe that the plaintiff would leave the jurisdiction of the court, as was asserted in the affidavits filed to secure the writs, and that the plaintiff had no such intention; that the writs were sued out for the purpose of harassing the plaintiff and his wife in order to effect payment; that the defendants' threats to have further writs issue in separate

suits based on the remaining invoices were made to the end that the plaintiff or his wife would borrow funds from friends or relatives and pledge their personal credit toward the payment of the debts occasioned by the said unpaid invoices, and that the defendants knew that the plaintiff had no funds to pay the premiums of bail bonds and was subjected to hardship in securing the monies for such payments. The complaint also alleges that the plaintiff had a good and meritorious defense to all the causes of action brought or threatened to be brought by the defendant in that an accord and satisfaction had been reached by the parties.

The defendants thereupon filed a motion to strike the amended complaint. On March 30, 1955 the court, after a full hearing, overruled the motion to strike the amended complaint and upon the plaintiff's filing bond in the sum of $2,000 issued a temporary injunction against the defendants forbidding them from suing out any writs of capias ad respondendum on any of the other invoices in their possession, from which order this appeal is taken by Aaron K. Paul, one of the defendants.

In determining the issues presented in this case, it becomes necessary to discuss the genesis of the writ of capias ad respondendum.

In England at common law the defendant had to appear in court before any judgment could be entered against him. This rule was probably derived from the ancient principle that recourse to the court depends upon the consent of the parties. Holdsworth's History of English Law, 3rd ed., vol. 2, p. 105; vol. 9, p. 252. Originally arrest was only permitted in actions of trespass and not in actions of debt. Gradually it was extended to cover most personal actions. On the arrest of the defendant on a capias ad respondendum the defendant was required to put in special bail to the

sheriff to secure his appearance on the return of the writ. Upon the return of the writ the defendant's appearance was effected by entering into a recognizance with two sureties by which it was agreed that in case of judgment against the defendant he would either pay the judgment or surrender himself as a prisoner, and that if he defaulted, the sureties would pay. 3 Bl. Comm., p. 291. In case the defendant was unable to secure the necessary bail he was committed to a debtor's prison. Upon judgment having been entered, a capias ad satisfaciendum could be forthwith issued under which the body of the debtor could be imprisoned until the costs and damages were paid. Consequently it was possible that the debtor could be imprisoned from the time of the inception of the suit until the payment of the judgment. In 1838 by act of Parliament, arrest on mesne process was abolished in all cases except those in which it appeared that the defendant was about to leave the country to avoid meeting the claim against him. Judgments Act, 1 and 2 Victoria, ch. 110, sec. 1, re-enacted by Debtors Act of 1869, sec. 6.

In Illinois the Constitution of 1818 prohibited imprisonment for debt unless the defendant refused to deliver up his estate for the benefit of his creditors in such manner as should be prescribed by law or in a case where there was a presumption of fraud. This identical provision was adopted in the succeeding Constitutions of the State, and appears in our present Constitution adopted in 1870. In the early case of People ex rel. Brennan v. Cotton, 14 Ill. 414, the court held that this prohibition did not extend to body executions issued in actions for torts, and subsequently by statute torts were specifically excluded from the operation of the prohibition of execution against the body. Section 5 of the Judgments and Executions Act, as amended in 1935 (Ill. Rev. Stat., chap. 77, par. 5 [Jones Ill. Stats. Ann. 107.155]), provides that a body execution should

229

not issue except on a judgment obtained for a tort committed by the defendant and when it shall appear by a special finding of the jury or the court, if the case is tried by the court without a jury, that malice is the gist of the action, and except where the defendant shall refuse to deliver up his estate for the benefit of his creditors. Ingalls v. Raklios, 373 Ill. 404.

It is also provided by statute that a capias ad respondendum may issue in suits on all contracts, express or implied, or on the judgment of any court, if the plaintiff files an affidavit setting forth the cause of action and the amount due, together with facts showing that the defendant fraudulently contracted the debt or incurred the obligation, or that he has concealed, assigned, removed or disposed of his property with intent to defraud the plaintiff (Ill. Rev. Stat., chap. 16, par. 1 [Jones Ill. Stats. Ann. 109.123]), and in actions sounding merely in damages where the same cannot be ascertained, the affidavit shall also set forth the nature and cause of the action, with the substantial or chief facts in relation thereto, and that the affiant verily believes that the benefit of whatever judgment may be obtained will be in danger of being lost unless the defendant is held to bail (chap. 16, par. 2 [Jones Ill. Stats. Ann. 109.124]). It has been held that the constitutional prohibition against imprisonment for debt does not apply to imprisonment under a capias ad respondendum issued in accord with the statutory requirements (In re Smith, 16 Ill. 347; Stafford v. Low, 20 Ill. 152), and that the constitutional prohibition against imprisonment for debt does not apply to imprisonment under a capias ad respondendum in tort actions (McKindley v. Rising, 28 Ill. 337).

It has been held that a defendant in a tort action, where malice is the gist of the action, is not entitled to relief under the provisions of the Insolvent Debtors' Act. Jernberg v. Mix, 199 Ill. 254, and see Ingalls v.

Raklios, supra; Ill. Rev. Stat., chap. 72, par. 2 [Jones Ill. Stats. Ann. 109.379]. Paragraph 4 of chapter 16 [Jones Ill. Stats. Ann. 109.126] dealing with bail in civil cases also provides that upon the issuance of a capias ad respondendum a bail bond of sufficient security shall be taken with the condition that in case the defendant shall not pay the judgment if a judgment is returned against him, the sureties will pay the same or surrender the body of the defendant, whereupon he may be confined until he furnishes such bail as is required under the statute, or is discharged by operation of law.

Thus we have extended into our system of jurisprudence many of the rules existing at early common law with reference to imprisonment of debtors, about which Mr. Holdsworth in his History of English Law, 3rd ed., vol. 8, at p. 231, says:

"Constraint of the debtor's person thus became in England a more general method of execution than in many other countries in Europe. Largely because it was introduced in this indirect way, a mode of execution which required, and in most countries received, careful limitation and regulation from the Legislature, was almost entirely unregulated."

Mr. Parnass, in an article "Imprisonment for Civil Obligations in Illinois," 15 Ill. L. Rev. 559, 571, says:

"Thus almost two centuries after English debtors, seeking relief from the harsh laws of England, founded an American colony, the institution of the debtor's prison still prevails in Illinois and in other states of the Union, though many have abolished it altogether. It is true, of course, that in this state, continued incarceration is possible only where the defendant is guilty of a malicious tort or dishonestly refuses to surrender his property for the satisfaction of a judgment against him, or is guilty of other fraud. It is nevertheless to be noted that execution against the body even in such

231

cases presents the anomaly of imposing a criminal con-
sequence upon a civil judgment, a judgment which may
have been entered by default, a judgment based on a
verdict and on a trial of the issues wherein the charges
need be proved merely by a preponderance of the evi-
dence, and not, as in other cases where criminal conse-
quences follow, beyond all reasonable doubt."

Even if we should agree that a capias ad satisfacien-
dum should be properly available to a creditor in this
present day and age and under the spirit of our times,
the capias ad respondendum puts the cart before the
horse. The defendant, before there is any adjudication,
is required to secure the payment of the judgment or
suffer imprisonment. Mr. Freedman, in his article
"Imprisonment for Debt" (2 Temple Law Quarterly
330, 341), says:

"And as Sir Roger North very justly remarks, . . .
'plaintiffs are commonly very outrageous, and love to
turn the first process (by a barbarous abuse of special
bail) into an execution which ought to come after judg-
ment, and be the last.' " (Roger North, Life of Francis
North, Baron of Guilford (3d ed.), vol. 1, p. 189.)

And Mr. Holdsworth, in his History of English Law,
vol. 9, p. 250, quotes from the Pleader's Guide by John
Surrebutter, Esq. (1st American ed., pp. 39–40):

> " 'Still lest the Suit should be delayed,
> And Justice at her Fountain stayed,
> A capias is conceived and born
> Ere yet th' ORIGINAL is drawn,
> To justify the Courts proceedings,
> Its Forms, its Processes, and Pleadings,
> And thus by ways and means unknown,
> To all but Heroes of the Gown,
> A Victory full oft is won
> Ere Battle fairly is begun.' "

In People ex rel. Levine v. Shea, 201 N. Y. 471, it is
said:

"Imprisonment for debt dies hard. Barbarous, cruel and senseless, it puts its victim in jail in order to make him do something which in most instances the imprisonment itself prevents him from doing. It is the lawful use of torture and differs only in the degree of the suffering caused from the thumb screw, the rack and the boot."

It is true that we have progressed a long way from the time when a judge could and did say, in Manby v. Scott, 1 Mod. 124, 132; 86 Eng. Reprints 781, 786 (1663): "If a man be taken in execution and lie in prison for debt, neither the plaintiff at whose suit he is arrested, nor the sheriff who took him, is bound to find him meat, drink and clothes; but he must live on his own, or on the charity of others; and if no man relieve him, let him die in the name of God, says the law, and so say I." This, harsh as it may sound, was a statement of a well-recognized rule of law. See Dive v. Manningham, 1 Plowden, 60, 68; 75 Eng. Reprints 96, 108–9 (1551). Today in Illinois the defendant imprisoned for debt is provided with meat and drink, the plaintiff is required to pay the jailer his board in advance, which board is taxed as additional costs, and the defendant is credited with the sum of $1.50 for each day he serves. It is also provided that no person may be imprisoned for debt for a longer period than six months. (Ill. Rev. Stat., chap. 72, pars. 29, 30, 31, 33 [Jones Ill. Stats. Ann. 109.407–109.409, 109.411].)

In the instant case the defendant argues strenuously that the amended complaint fails to state any ground upon which a court of equity may act.

■ The historic function of a court of equity is the administration of remedial justice, and the sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity, which discretion, of course, is not arbitrary but must be exercised in accordance with the fixed principles and precedents

233

of equity jurisprudence. 30 C. J. S., Equity, sec. 10. In City of Chicago v. Collins, 175 Ill. 445, the court says:

"No inflexible rule can be laid down for the determination of the question as to whether jurisdiction exists in a court of equity. In general, an adequate legal remedy will suffice to make such courts hesitate in acting. But inadequacy in granting relief for the determination of a right may arise from causes other than mere forms of remedy, and it will not do to sacrifice justice on the mere ground of the form of the remedy, where convincing facts show that adequate relief can best be had in the forum of a court of equity."

An application for injunction is addressed to the conscience and sound discretion of the court and it is not controlled by technical legal rules. Cragg v. Levinson, 238 Ill. 69. Unless a reviewing court finds that the discretion has been abused the order will not be set aside. Bernard Bros., Inc. v. Deibler, 326 Ill. App. 538.

A court of equity can always shape its remedy to meet the demands of justice in every case, however peculiar. Geiger v. Merle, 360 Ill. 497, 508. Here the temporary injunction issued after notice and a hearing and upon the giving of bond. It did not finally conclude the rights of the parties. The balance of convenience or hardship frequently is a factor of controlling importance at the time of granting or refusing the temporary injunction.

The merits of a controversy are not brought before the reviewing court by an interlocutory appeal. Hebenstreit v. Consolidated Coal Co., 3 Ill.App.2d 453; Scholz v. Barbee, 344 Ill. App. 630; Nestor Johnson Mfg. Co. v. Goldblatt, 371 Ill. 570, 574. In Hebenstreit v. Consolidated Coal Co., supra, it is said:

"Defendant insists that a temporary injunction should be issued only where the complaint shows on its face a clear right to relief and relies upon Stenzel v.

Yates, 342 Ill. App. 435, 440, 96 N.E.2d 813; Skarpinski v. Veterans of Foreign Wars, 343 Ill. App. 271, 274, 98 N.E.2d 858; and Hope v. Hope, 350 Ill. App. 190, 194, 112 N.E.2d 495. These cases deal with the granting of injunctive relief based solely on the complaint, no notice having been given or hearing had. Here the chancellor conducted a hearing on factual issues that raised a debatable question of law of first impression as to the scope of the restrictive covenant. If he felt, in his discretion, that the status quo should be preserved for further proceedings and research, we cannot find an abuse of that discretion. Especially is this true in the absence of a showing by the defendant that the delay by reason of the temporary injunction would occasion serious injury to anyone. In Scholz v. Barbee, 344 Ill. App. 630, 101 N.E.2d 845, the court said:

" 'As to the question whether or not the complaint must state a cause of action before a temporary injunction may issue, it has been said that the question presented is not whether the complaint is not demurrable, but does it prima facie state a cause of action. If it does, then the court in its discretion to keep the matter in status quo may issue the temporary injunction.' "

The same contention has been made by the defendant here, and he cites the same cases. The quoted opinion of the court effectively disposes of that contention.

■■ Counsel for the defendant argues that under the facts in the instant suit equity should not take jurisdiction on the ground of preventing a multiplicity of suits. In Adams v. Oberndorf, 121 Ill. App. 497, the court quotes Mr. Pomeroy with approval and states as settled the following as a case in which equity has jurisdiction, viz.:

" 'In suits by a single party against a number of persons to restrain the prosecution of simultaneous actions at law brought against him by each defendant and to

procure a decision of the whole in one proceeding where all these actions depend upon the same questions of law and fact.' Pomeroy's Eq. Jur., vol. 1, sec. 274. See also sec. 245; Edward Hines Lumber Co. v. Scott, 101 Ill. App. 523–527, and references there cited."

The court also says that whether or not equity will interfere to prevent by injunction a multiplicity of suits depends upon the circumstances of each particular case and whether such interference is called for to discountenance useless litigation and prevent irreparable injury. However, we do not feel that it is material whether or not the trial court could or could not properly exercise jurisdiction on that particular ground. Here the injunction was sought and granted, not to prevent the bringing of the suits, but to prevent successive issuances of the capias.

The original purpose of the writ of capias ad respondendum was to assure the appearance of the defendant in court. It has become a means by which the defendant, if he should be unable to secure sureties satisfactory to the court who would agree to pay the judgment when entered or to turn over the body of the defendant to the court, may be confined in jail at the pleasure of the plaintiff, where the action is for a tort the gist of which is malice, for a period not to exceed six months. The trial court could properly take judicial notice that suits filed in the Circuit and Superior Courts of Cook County where a jury trial is requested are not ordinarily reached for trial in less than four years.

The plaintiff urges that a court of equity could take jurisdiction in the instant suit in order to prevent an abuse of process. In Patterson v. Northern Trust Co., 286 Ill. 564, it is said: "A court has inherent power to protect itself and litigants against harassing and vexatious litigation and an abuse of the process of the

236

court." Courts have frequently observed that the elements vital to an action for abuse of process are not clearly defined either by the cases or by writers on the subject. The reason apparently is that the term has been used as a designation for a variety of dissimilar situations which have in common only the fact that actionable injury was inflicted in connection with the use of judicial process and under circumstances such that the narrowly circumscribed action of malicious prosecution was inapplicable. "The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." 1 Am. Jur., Abuse of Process, sec. 6. In Coplea v. Bybee, 290 Ill. App. 117, the court said:

"Actual malice is unimportant if the process is wilfully used to accomplish the purpose intended, since unlawful acts wilfully done are to be deemed malicious as to those injured thereby. Therefore, if process is wilfully used to accomplish a purpose not justified by the law, it is an abuse for which an action will lie. The abuse consists in the unlawful method by which the act is done, and the intentional use of this method constitutes malice in law. 1 Am. Jur. Abuse of Process, secs. 6 and 8.

"Abusing the process of the law, to the injury of another, is of itself malicious. Schaper v. Sutter, 63 Ill. App. 257; Cripe v. Pevely Dairy Co., 275 Ill. App. 231.

"It is also held that in an action for abuse of legal process, it is not necessary to prove malice or want of probable cause, for the law will imply both, if an abuse is proven. Wicker v. Hotchkiss, 62 Ill. 107; Phoenix Mut. Life Ins. Co. v. Arbuckle, 52 Ill. App. 33."

237

See also Grainger v. Hill, 4 Bingham's New Cases 212.

The plaintiff in his complaint alleged that the writs were sued out to harass the plaintiff and his wife and to compel them to borrow funds or to pledge their personal credit toward the payment of the debts incurred through the discounting of the invoices by the plaintiff as an officer of the bankrupt corporations and that the defendants knew that the plaintiff had no funds to pay premiums for bail bonds. The defendant contends that since the writs were or would be issued in compliance with the statute there was no threatened abuse of process which would entitle the plaintiff to relief in a court of equity. In his motion to strike the complaint the defendant argues that the mere statement of having "threatened" is not sufficient, but that the plaintiff should have stated the exact words by which the threats were made, and in support of his contention cites Peck v. Peck, 213 Ill. App. 665. This case in our opinion is a case strongly in favor of the plaintiff. It lays down the well-understood rule of law that the facts on which an inference arises must be stated in the complaint; and here a reading of the complaint amply substantiates the alleged inference.

The charge made in the complaint that the use of the successive issuances of the writ of capias ad respondendum was made for the purpose of compelling the plaintiff to borrow funds from friends or relatives and seek to pledge their personal credit toward the payment of the debts occasioned by the unpaid invoices is not an allegation known to our times alone. Apparently human nature does not change greatly. In the prologue to a remedial act governing capias ad respondendum passed in 1661 (13 Charles II, stat. 2, cap. 2), it is said:

"Whereas there is a great complaint of the people of this realm, that for divers years now last past, very many of his majesty's good subjects have been arrested upon general writs of trespass quare clausum fregit,

238

bills of Middlesex, latitats, and other like writs issued out of the courts of king's bench and common pleas, . . . but those arrests have been many times procured by malicious persons to vex and oppress the defendants, or to force from them unreasonable and unjust compositions for obtaining their liberty; and by such evil practices many men have been, and are daily undone, and destroyed in their estates, without possibility of having reparation. . . ."

The complaint alleges that the threatened use of the process was for the purpose of compelling the plaintiff and his wife to secure funds or to pledge their personal credit toward the immediate payment of the alleged debts, which is a collateral end going far beyond what the plaintiff could legally and regularly be compelled to do under a capias. The facts set out in the complaint are sufficient to support the allegations. If the factual allegations in the complaint were true and well-pleaded, a ground for the exercise of equitable jurisdiction was properly presented to the court. Baird v. Community High School Dist., 304 Ill. 526, 529. We find they were well-pleaded. Their truth is admitted by the motion to strike.

The plaintiff in his brief urges that the statute violates the Constitutions of the United States and of Illinois. We have no power to pass on constitutional questions, nor can we speculate as to what position the Supreme Court of Illinois might take on a reexamination of this question properly presented to them. The law now is that imprisonment for debt in a tort action, where there has been a special finding by the trial tribunal that malice is the gist of the action, is not repugnant to the Constitution of the State of Illinois. We agree with the statement made by Mr. Justice O'Connor in Pappas v. Reabus, 299 Ill. App. 499:

"The effect of the 1935 amendment to section 5 was to abolish executions against the body in tort actions in which malice is not the gist of the action, and also to forbid the issuance of a body execution even in actions in which malice is the gist of the action unless there is a special finding by the jury, or by the court where the case is tried without a jury, that malice is the gist of the action. *Whether the legislature should have gone farther and abolished body executions in all tort actions, and whether the present statute is 'out of tune with the American spirit and has no place in American jurisprudence,'* as said in City of Chicago v. The Tribune, 307 Ill. 595 (which was an action for an alleged libel claimed to have affected the financial credit of the City) *obviously is in the province of the legislature and not of the courts.* (See Reinwald v. McGregor, 239 Ill. App. 240.)" (Italics ours.)

 However, the fact that the issuance of the capias ad respondendum is permitted by law and that imprisonment under such a writ is not in conflict with the Constitution does not cover the issuance of such writs with a buckler of righteousness which makes them immune from the exercise of the remedial powers of a court of equity. A court of equity has the same inherent power to restrain the abuse of a capias as it has to restrain the abuse of any other process. The courts in modern times have shown a tendency to modify the rigors of the law relating to imprisonment. It has been held that where a trustee or receiver refuses to pay over money actually received and wrongfully withheld, a court of equity has no power to imprison such receiver or trustee unless it is clearly shown by the evidence that he has the money to pay or had it and wrongfully disposed of it. "Courts may imprison for willful defiance, but they will not imprison for a failure to comply with a decree where the disobedience is not willful. . . . Courts of equity proceed

upon the principles of justice applicable alike to liberty and to property rights." Tudor v. Firebaugh, 364 Ill. 283.

The trial court properly overruled the motion to strike the amended complaint and was not in error in issuing the temporary injunction complained of. The order of the Circuit Court is affirmed.

Order affirmed.

ROBSON and SCHWARTZ, JJ., concur.