Caldwell Advertising, Inc., Plaintiff-Appellant, v.
Hilda C. Maloney, et al., Defendants-Appellees.

Gen. No. 51,500.

First District, Fourth Division.

May 26, 1967.

McCORMICK, J., dissenting.

Reversed and remanded with directions.

Summerfield and Summerfield, of Chicago (John A.
Summerfield and Harold L. Summerfield, of counsel), for
appellant.

Paul M. Smith, Jr., of Chicago (Anthony M. Anzalone,
of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the
court.

Plaintiff appeals from an order denying its petition
that defendant, Hilda Maloney, be committed to the
custody of the Sheriff.

On August 13, 1962, plaintiff obtained a judgment for $13,233.59 against defendant, Hilda Maloney, (a former employee of plaintiff) for breach of her fiduciary duty (wilful misappropriation of plaintiff's money) with a special finding that malice was the gist of the action.[1] On June 24, 1964, a body execution was issued against the defendant. She surrendered into custody and was immediately brought to court for a hearing as to whether the body execution should have been issued. The hearing was continued on various occasions (defendant being free on her personal bond) until March 15, 1966, at which time plaintiff filed its petition to commit the defendant to custody. The matter was continued until April 19. On April 12 defendant filed a motion to strike the plaintiff's petition on the ground that "defendant is making satisfactory restitution and has been punished." On April 19 plaintiff's motion was denied, from which plaintiff appeals.

Defendant contends that the trial court has the discretionary power to discharge a body execution; and that since defendant was satisfying the judgment on installment payments the trial judge properly exercised his discretion in denying the plaintiff's motion. Defendant does not contend that the body execution was improperly issued nor that the judgment and interest had been fully paid.

The circumstances under which a body execution may be issued against a defendant are set forth in Illinois Revised Statutes, 1963, chapter 77, section 5:

> No execution shall issue against the body of the defendant except when the judgment shall have been obtained for a tort committed by such defendant, and

---

[1] A judgment in the same amount was also entered against James F. Maloney, but there was no finding as to him that malice was the gist of the action. Therefore, throughout this opinion "defendant" will refer only to Hilda Maloney.

it shall appear from a special finding of the jury, or from a special finding by the court, if the case is tried by the court without a jury, that malice is the gist of the action, and except when the defendant shall refuse to deliver up his estate for the benefit of his creditors.[2]

The procedure subsequent to the arrest of a debtor by virtue of a body execution is set forth in Illinois Revised Statutes, 1963, chapter 77, section 68:

When a debtor is arrested by virtue of an execution against his body, he shall be immediately taken before the court out of which the execution issued. The court shall proceed in a summary manner to hear the evidence, if any, as to whether the execution against the body should have been issued. If upon such hearing the court finds that the body execution was not properly issued under the provisions of this Act it shall order that the body execution be quashed and that the judgment debtor be discharged from custody; but such discharge shall not affect the right

---

[2] Since its amendment in 1935, this section has been construed in Brandtjen & Kluge, Inc. v. Forgue, 299 Ill App 585, 20 NE2d 616. The court stated at page 590:

Defendants say that an affidavit and demand upon the defendants to deliver up their estate for the benefit of the creditor are necessary before a capias will issue. This is not necessary where the judgment is in tort based on malice. (Citing cases.)

To the same effect are: Addante v. Pompilio, 317 Ill App 150, 45 NE2d 521; In re Petition of White, 302 Ill App 69, 23 NE2d 401; Pappas v. Reabus, 299 Ill App 499, 20 NE2d 327. The court in Pappas v. Reabus, supra, stated at page 503 that:

Whether the legislature should have gone farther and abolished body executions in all tort actions, (referring to the 1935 legislative amendment to section 5) and whether the present statute is "out of tune with the American spirit and has no place in American jurisprudence," . . . obviously is in the province of the legislature and not of the courts.

of the judgment creditor to collect the judgment otherwise than by execution against the body of the judgment debtor. If, in a case where the body execution was issued under the provisions of Section 62, the court finds that the allegations of the affidavit required by that Section have been proved or *if, in a case where the judgment was obtained for a tort and there was a special finding that malice was the gist of such action as required by Section 5 of this Act, the court finds that the body execution was properly issued in such case,* it shall order that the judgment debtor be conveyed to the county jail and kept in safe custody until he shall satisfy the judgment or be discharged according to law. The court may continue such hearing from time to time and in such case it shall either remand the judgment debtor into the custody of the sheriff or other officer of the court or allow him to give bond for his appearance from time to time until the proceedings are concluded, such bond to be in such sum and with such security as the court directs. (Emphasis supplied.)

██ Under section 68, as aforequoted, the court shall hold a hearing to ascertain whether the body execution was properly issued and that hearing may be continued from time to time.[3] There is no provision in the statute granting a trial judge the power or discretion to discharge a debtor from the body execution where the exe-

---

[3] The purpose of the hearing (first required in 1955) is to provide a ready means to a debtor to be released from jail if the body execution was improperly issued. Prior to 1955 the statute did not require such a hearing and merely provided that: "When a debtor shall be arrested by virtue of an execution against his body, he shall be conveyed to the county jail . . . and kept in safe custody until he shall satisfy the execution or be discharged according to law [the maximum imprisonment was 6 months]." Ill Rev Stats 1953, c 77, § 68.

cution was properly issued. In the instant case it is undisputed that the judgment has not been satisfied. Furthermore, defendant has never contended in the court below or on appeal that the body execution was improperly issued. In her brief filed in this court defendant states: "The matter of the Court making a finding as to whether or not the Writ should have been issued was not before the Court it appearing from the record herein on file that the writ was properly issued." We therefore find that the trial judge erroneously denied the plaintiff's petition.

Plaintiff also appeals from the denial of that portion of its motion (filed November 30, 1965) in which it requested the court to apportion the payments made by the defendant between interest and principal. Upon an examination of the record on appeal we find that no ruling was ever made on that portion of plaintiff's motion, and therefore the issue is not before us.

The order of the trial court denying plaintiff's petition that defendant be committed to custody is reversed and the cause remanded with directions that the trial court enter an order granting the relief requested in plaintiff's petition of March 15, 1966.

Reversed and remanded with directions.

ENGLISH, P. J., concurs.

McCORMICK, J., dissenting:

The writer of this opinion is constrained to dissent from the conclusions reached by the majority.

It is true, as stated in the majority opinion, that the defendant admits in the brief filed in this court that the writ of capias ad satisfaciendum had been properly issued. Nevertheless, an admission of that character does not prevent this court from making a determination as to whether all of the statutory requirements were complied

with. This matter is particularly interesting to the writer because it is an anomaly existing in our laws in this enlightened age.

Up to the time when the legislature repealed the act providing for capias ad respondendum, it was possible to have the defendant in a civil case arrested and compelled to give bail. In case of failure to give bail he was committed to a debtor's prison. In 1838, England, apparently taking a more enlightened view than our State, abolished arrest on mesne process. Shatz v. Paul, 7 Ill App2d 223, 129 NE2d 348 (decided in 1955). Parnass, "Imprisonment for Civil Obligations in Illinois," 15 Ill L Rev 559, 571 (1920–21), says:

> "Thus almost two centuries after English debtors, seeking relief from the harsh laws of England, founded an American colony, the institution of the debtor's prison still prevails in Illinois and in other states of the Union, though many have abolished it altogether. It is true, of course, that in this state, continued incarceration is possible only where the defendant is guilty of a malicious tort or dishonestly refuses to surrender his property for the satisfaction of a judgment against him, or is guilty of other fraud. It is nevertheless to be noted that execution against the body even in such cases presents the anomaly of imposing a criminal consequence upon a civil judgment, a judgment which may have been entered by default, a judgment based on a verdict and on a trial of the issues wherein the charges need be proved merely by a preponderance of the evidence, and not, as in other cases where criminal consequences follow, beyond all reasonable doubt."

We are aware that the Supreme Court of this State, in a series of opinions commencing with 1853, People ex rel. Brennan v. Cotton, 14 Ill 414, has held that the constitutional provision abolishing imprisonment for debt is

applicable only to actions upon contracts. A number of these cases were cited in In re Petition of Blacklidge, 359 Ill 482, 195 NE 3. It seems high time to the writer of this dissent that section 12 of article 2 of the Illinois State Constitution of 1870 should be revised.

In People v. LaMothe, 331 Ill 351, 163 NE 6, an opinion handed down in 1928, dealing with the power of a court of equity to punish for contempt by imprisonment upon the refusal of a trustee to pay over money actually received and wrongfully withheld, the court in an enlightened opinion said:

> "No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. Courts may imprison for willful defiance, but they will not imprison for a failure to comply with a decree where the disobedience is not willful . . . . No man can be legally imprisoned for a failure to pay over money he does not have and never had."

In Peiffer v. French, 376 Ill 376, 33 NE2d 591 (opinion decided in 1941), the court said:

> "Laws in derogation of the liberty of a citizen must be strictly construed, and to justify any imprisonment for tort, which is contrary to the general tendency of our times, statutory requirements must be meticulously observed."

The law in effect prior to the amendment of section 5 of chapter 77 provided:

> "Cahill, Ill Rev Stats 1933, c 77, § 4. Execution. The person in whose favor any judgment, as aforesaid, may be obtained, may have execution thereon in the usual form, directed to the proper officer of

any county, in this State, against the lands and tenements, goods and chattels of the person against whom the same is obtained, or against his body, when the same is authorized by law.

"Ill Rev Stats 1933, c 77, § 5. Execution against body, when. No execution shall issue against the body of the defendant, except when the judgment shall have been obtained for a tort committed by such defendant, or unless the defendant shall have been held to bail upon a writ of capias ad satisfaciendum [respondendum] as provided by law, or he shall refuse to deliver up his estate for the benefit of his creditors.

"[In lieu of RS 1845, p 301, § 6. See Const 1870, art II § 12: 'Bail in Civil Cases,' ch 16. Capias ad satisfaciendum in above section means capias ad respondendum. People v. Hoffman, 97 Ill 234. Cases in point, see Callaghan's Ill Dig, Executions, §§ 89–125.]"

Section 5 of chapter 77 was amended in 1935, and now provides that:

"No execution shall issue against the body of the defendant except when the judgment shall have been obtained for a tort committed by such defendant, and it shall appear from a special finding of the jury, or from a special finding by the court, if the case is tried by the court without a jury, that malice is the gist of the action, *and* except when the defendant shall refuse to deliver up his estate for the benefit of his creditors." [Note that it requires that there be a finding that malice is the gist of the action, *"and except when the defendant shall refuse to deliver up his estate for the benefit of his creditors."* (Emphasis supplied.)]

155

Under the former section 5, execution against the body of the defendant could be obtained when a tort judgment had been entered against him. Ingalls v. Raklios, 373 Ill 404, 26 NE2d 468, discussed section 5 as amended, and held that there had to be a special finding that malice was the gist of the action before a body execution could be issued, and it was so held in Greener v. Brown, 323 Ill 221, 153 NE 825 (decided 1926 before the 1935 amendment was passed). In the latter case the court held that in a tort action where the trial court had found that malice was the gist of the action, it was not necessary, before the issuance of the capias, that demand should have been made or execution served upon the defendant requiring him to turn over his estate. The court did not cite or quote from the statute.

In re Petition of Blacklidge, 359 Ill 482, 195 NE 3 (opinion filed 2/15/35, case decided under the law prior to amendment of section 5), was a tort action in which the jury found the defendant guilty, and at page 485, the court said:

> "It will thus be noted that the statute provides that the plaintiff may have execution against the body of the defendant when the same is authorized by law, and specifically excepts from the prohibition against such executions any judgments obtained for a tort committed by the defendant; in such cases an execution against the body is deemed authorized by law. (People v. Walker, 286 Ill 541.) It is further provided by section 2 of the Insolvent Debtors act (Cahill's Stat 1933, p 1574; Smith's Stat 1933, pp 1598, 1599;) that any person arrested or imprisoned upon any process issued for the purpose of holding him to bail upon any indebtedness or in any civil action of which malice is not the gist may be released from such imprisonment by complying with the provisions of that statute."

156

The court held that in order for the petitioner to bring herself under the provisions of the Insolvent Debtors Act, which she attempted to do in the petition, it was necessary for her to prove that malice was not the gist of the action. The court held that the petitioner had failed to make such proof. The court cited People v. Walker, 286 Ill 541, 122 NE 92, in which case the former statute was cited, and it was pointed out that "no execution shall issue against the body except when the judgment shall have been obtained for a tort committed by the defendant, or unless the defendant shall have been held to bail or shall refuse to deliver up his estate for the benefit of his creditors."

In Marshall Field & Co. v. Freed, 269 Ill 558, 109 NE 1018 (opinion handed down in 1915), the court held that where the judgment was for a tort committed by the defendant it was never contemplated nor required that the plaintiff should make an affidavit that the debtor had property which he unjustly refused to surrender, or that he fraudulently conveyed, concealed or otherwise disposed of property with a design to secure the same to his own use or to defraud his creditors. The court further held that under section 5 of the former Act, if the judgment was for a tort committed by the defendant, an execution against the body was authorized without regard to whether the defendant had or had not property and without regard to whether he had refused to deliver up his estate for the benefit of his creditors, and the court so construed the statute. The court further pointed out that the precise question had not been previously decided by the court.

Under the 1935 amendment to section 5, the legislature provides: "*and* except when the defendant shall refuse to deliver up his estate for the benefit of his creditors." In order to reach the conclusion that an execution may issue without a demand on the defendant to turn over his

estate, we must consider that the legislature did not know anything about the former law or that the use of "and" instead of "or" was inadvertent. In any case, under the rule that a strict construction must be given to statutes which can deprive a person of his liberty, meaning must be given to the legislature's use of the word "and."

We are familiar with the fact that in Addante v. Pompilio, 317 Ill App 150, 45 NE2d 521 (abst.), in In re Petition of White, 302 Ill App 69, 23 NE2d 401 (abst.), in Pappas v. Reabus, 299 Ill App 499, 20 NE2d 327 and in Brandtjen & Kluge, Inc. v. Forgue, 299 Ill App 585, 20 NE2d 616, it is held that under the amendment the statute does not require a demand or showing that the delivery of the goods has been requested. These cases were decided shortly after the amendment to section 5 was passed by the legislature. It is the opinion of the writer that they should no longer be followed and that section 5 as amended should be interpreted to require, even in tort cases where there is a specific finding that malice was the gist of the action, that there must be a showing that the defendant has refused to deliver up his estate for the benefit of his creditors. In this day and age, to hold otherwise should shock the judicial conscience.

In the petition which the plaintiff filed in the instant case, asking that the court direct a body execution to issue, no such showing was made. In denying the petition, the court ruled properly, and the case should be affirmed.