**Thomas S. BARRETT, Sr., Plaintiff-Appellant,**

**v.**

**James A. BAYLOR et al., Defendants-Appellees.**

**No. 71–1158.**

United States Court of Appeals, Seventh Circuit.

March 14, 1972.

---

Harold W. Huff, James P. Dorr, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff-appellant.

Kenart M. Rahn, Don H. Reuben, Steven L. Bashwiner, Earl G. Schneider, Chicago, Ill., for defendants-appellees; Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and SPRECHER, Circuit Judge.

SPRECHER, Circuit Judge.

The plaintiff sought to state a diversity claim for relief based upon abuse of process in connection with three civil actions presently pending in the state courts of Illinois, in each of which one or more of the defendants are parties.

On September 9, 1969, George F. Barrett and L. Williams, members of Prudence Mutual Casualty Company, a domestic mutual insurance company incorporated in Illinois ("Prudence"), brought a derivative and class action in the Circuit Court of Cook County in case No. 69 CH 3231, against more than 40 defendants, including present and former officers and directors, their alleged nominees, and insurance agencies of Prudence, alleging several acts of mismanagement and misappropriation of assets of Prudence. Included as a defendant in his capacity as a director and

officer of Prudence was Thomas S. Barrett, Sr., a brother of the plaintiff George Barrett. Also added as a defendant on September 23, 1969, was James A. Baylor as Director of Insurance of the State of Illinois, who was charged with wrongfully approving the disposition of Prudence's accident and health insurance business to Maine Insurance Company.

On October 1, 1969, Prudence was placed in rehabilitation and Baylor was named rehabilitator pursuant to state statute. On February 7, 1970, Prudence was placed in liquidation and Baylor was appointed liquidator pursuant to state statute.

On October 29, 1969, Thomas S. Barrett, Sr., moved to dismiss the complaint on the ground that under the Illinois Insurance Code only the director of insurance had the right to file a complaint concerning the conduct and affairs of Prudence.

In the meantime, American United Cab Association, Radio Cab Company and Solly Breitowich, as taxicab owners and operators who held public liability and property damage policies issued by Prudence, filed a derivative and class action against Thomas S. Barrett, George F. Barrett and other officers and directors of Prudence as case No. 69 CH 3837 in the Circuit Court of Cook County alleging acts of mismanagement and misappropriation of Prudence.

On January 23, 1970, American United Cab Association, Radio Cab Company and Solly Breitowich sought to intervene in 69 CH 3231 on the ground that one of the plaintiffs, George F. Barrett, formerly chairman of the board of Prudence, would not adequately represent the interests of other members of Prudence.

The Circuit Court judge consolidated cases 69 CH 3231 and 69 CH 3837. Subsequently, he granted intervention in Case 69 CH 3231 by the plaintiffs in 69 CH 3837 and thereupon dismissed 69 CH 3837.

Thereafter in April, 1970, the state court judge denied the motion of Thom-

as S. Barrett, Sr., to dismiss 69 CH 3231 on the ground that under the Illinois Insurance Code only the director could bring the action.

On May 25, 1970, Thomas S. Barrett, Sr., filed a motion for leave to file a petition for writ of mandamus in the Supreme Court of Illinois, alleging that the director of insurance had the exclusive right to prosecute causes of action on behalf of Prudence. The Supreme Court denied the motion on May 27, 1970.

On May 15, 1970, Universal Mutual Casualty Company ("Universal") filed a complaint in the Circuit Court of Cook County as case No. 70 CH 2135, verified by Thomas S. Barrett, Sr., as Secretary-Treasurer of Universal, against James A. Baylor as insurance director, alleging that the director was wrongfully withholding assets belonging to Universal. Director Baylor counterclaimed, alleging that Prudence and Universal had common officers, directors and facilities, that Thomas S. Barrett, Sr., and other officers and directors of Universal had committed numerous acts of malfeasance in connection with their joint operation of Prudence and Universal, that Universal was insolvent, and praying for the appointment of a liquidator for Universal.

On June 12, 1970, Thomas J. Barrett, Sr., filed the present complaint in the federal district court, alleging that Baylor, George F. Barrett, L. Williams, American United Cab Association, Radio Cab Company and Solly Breitowich conspired to bring cases 69 CH 3231, 69 CH 3837 and to counterclaim in 70 CH 2135, "well knowing that no authority exists in law for the maintenance of any representative actions by any person other than the Director of Insurance as provided by Statutes of the State of Illinois" in order to deprive Thomas S. Barrett, Sr., of his livelihood and to bring him into disrepute. The complaint described the alleged wrongdoing as "tortious abuse of the judicial process to inflict injury upon the plaintiff."

On July 24, 1970, the state court judge consolidated cases 69 CH 3231 and

**122**

70 CH 2135. Universal appealed from this order to the Illinois Appellate Court but the appeal was dismissed on Baylor's motion on October 13, 1970.

The consolidated cases remain pending in the state court.

On December 30, 1970, the federal district court dismissed the action "in consonance with the doctrine of comity" upon the motions to dismiss of all defendants. Each of the defendants had expressly moved to dismiss on the ground, among others, that the complaint failed to allege a claim upon which relief may be awarded.

Thomas S. Barrett, Sr., has appealed the order of dismissal and has argued that the court should have assumed diversity jurisdiction and disposed of the case on its merits. We affirm the district court for the reason that the complaint failed to state a claim for relief under Illinois law.

■■ It is well established that the judgment of a district court may be affirmed by a court of appeals where the result is correct, although the district court assigned a different reason for its decision. J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); United States v. Rose, 346 F.2d 985 (3rd Cir. 1965), cert. denied, 382 U. S. 979, 86 S.Ct. 551, 15 L.Ed.2d 469 (1966). Where the lower court could have properly dismissed plaintiff's complaint for failure to state a claim, its dismissal upon another ground will be affirmed. Lusk v. Eastern Products Corp., 427 F.2d 705, 708 (4th Cir. 1970).

■ Obviously, the plaintiff has failed to state a claim under Illinois law for malicious use of process, which is "but another name for malicious prosecution" and requires (1) arrest of the person, seizure of property, or other special injury beyond service of summons only, and (2) termination of the prosecuted suit in the plaintiff's favor. Ammons v. Jet Credit Sales, Inc., 34 Ill. App.2d 456, 461–62, 181 N.E.2d 601, 603 (1962). Neither element has occurred

in the present case. The plaintiff's alleged claim must therefore rest, if anywhere, upon *abuse* of process.

An Illinois court has said, "Courts have frequently observed that the elements vital to an action for abuse of process are not clearly defined either by the cases or by writers on the subject. The reason apparently is that the term has been used as a designation for a variety of dissimilar situations. . . ." Shatz v. Paul, 7 Ill.App.2d 223, 237, 129 N.E.2d 348, 355 (1955).

■ Abuse of process, sometimes called malicious abuse of process, is the misuse of legal process to accomplish some purpose outside the proper scope of the process itself. "There are two essentials to an action for abuse of process: an ulterior purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings." March v. Cacioppo, 37 Ill.App.2d 235, 243, 185 N.E.2d 397, 401 (1962).

Professor Prosser has analyzed the cases throughout the country which have applied the above elements specified by the Illinois courts and has concluded (Law of Torts (3d ed. 1964) at 877–78):

"The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort. The cases have involved such extortion by means of attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt." (Footnotes omitted.)

The Illinois courts have found no abuse of process even in the following cases involving dubious practices: (1)

A garnishment demand was served upon the plaintiff and her employer before any judgment was obtained (Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 181 N.E.2d 601 (1962)); (2) A confession of judgment was followed by garnishment of a bank account for rent *in futuro* although the lease contained no acceleration clause (March v. Cacioppo, 37 Ill.App.2d 235, 185 N.E.2d 397 (1962)); (3) Misrepresentation, concealment and perjury allegedly hid the equitable owner's interest in real estate (John Allan Co. v. Brandow, 59 Ill.App. 2d 328, 207 N.E.2d 339 (1965)); (4) A wrongful levy was made pursuant to a void judgment (Keller v. Continental Dist. Co., 105 Ill.App.2d 327, 245 N.E. 2d 513 (1969)); (5) Cause of action wrongfully charged plaintiff with misuse of corporate funds (Nemanich v. Long Grove Country Club Estates, Inc., 119 Ill.App.2d 169, 225 N.E.2d 466 (1970)); and (6) Cause of action sought declaratory judgment that defendants' rezoning of their property to build a high-rise apartment building was invalid (Siegel v. City of Chicago, 127 Ill.App.2d 84, 261 N.E.2d 802 (1970)). *See also* Alberto-Culver Co. v. Andrea Dumon, Inc., 295 F.Supp. 1155 (N.D.Ill. 1969) at 1160: "Regular and legitimate use of process, though with bad intentions, is not a malicious abuse of process."

■ The plaintiff has failed to state a claim for relief under the standards established by the Illinois courts.[1] The complaint merely recites the facts surrounding the filing of the three state causes of action and adds conclusionary allegations that this litigation has caused and will cause harm to the plaintiff, but does not allege any special harm other than that which normally flows from any litigation. The complaint also alleges that the parties conspired to maintain the law suits despite the fact that under Illinois law only the director of insurance allegedly had that right. It is difficult to see how the allegation of the fact that there may have been differences of opinion as to the proper method of prosecuting the causes after the director had been appointed rehabilitator and later liquidator, can, under Illinois law, state a claim for relief for abuse of process. But this allegation can in no event save the complaint for yet another reason.

■ The rule of the law of the case is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter. United States v. U. S. Smelting, Refining & Mining Co., 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950). The unreversed decision on a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit. United States v. Swift & Co., 189 F. Supp. 885, 902 (N.D.Ill.1960), aff'd, 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961).

■ The rule of the law of the case is applied within the federal system. When a federal district court has jurisdiction over the subject matter and the parties, its adjudication is the law of the case and is binding on all other courts, subject only to the appellate process. United States ex rel. Lawrence v. Woods, 432 F.2d 1072 (7th Cir. 1970), cert. denied, 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971).

Whether the application of the rule of the law of the case is a matter of procedure requiring application of the federal rule or a matter of substance requiring application of the state rule under the Rules of Decision Act, 28 U.S.C. § 1652, as applied in Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

---

[1]. In view of our conclusion that no claim has been stated, we need not decide whether a court other than the court whose process has allegedly been abused should undertake to determine whether an abuse has occurred. *See* Patterson v. Northern Trust Co., 286 Ill. 564, 567, 122 N.E. 55, 56 (1919): "A court has inherent power *to protect itself* and litigants against harassing and vexatious litigation and an abuse of process of the court." (Emphasis added.)

1188 (1938), is not material in this case since the Illinois courts also apply the rule of the law of the case. 14 I.L.P. Courts § 74, pp. 233–35.

 Although rulings of state *nisi prius* courts are not binding upon federal courts in diversity cases as a matter of *stare decisis*, they are binding in instances of *res judicata* or law of the case. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940) (decision of New Jersey Court of Chancery); King v. Order of United Commercial Travelers, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948) (decision of South Carolina Court of Common Pleas); Temple v. Lumber Mutual Casualty Ins. Co., 250 F.2d 748 (3rd Cir. 1958).

Professor Moore summarizes the law in this area as follows (1B Moore's Federal Practice (2d ed. 1965) ¶ 0.404 [7]):

"It follows from what has been said that in a non-federal matter where the state substantive rule has been established in state court litigation that is still pending or has been dismissed without prejudice, the state rule constitutes the law of the case in another action in the federal court involving the same matter and the same parties, or those in privy with them, unless, of course, the rule enunciated no longer represents the state law."

Here the state court judge had ruled that the consolidated cases were not subject to dismissal because the director of insurance had not filed them nor maintained them. The Supreme Court of Illinois refused to entertain a petition for writ of mandamus to command the director to assert his alleged rights. This was the law of this case at the time it was appealed.

Since under Illinois law the charge of conspiracy is merely an aggravation of the alleged wrongful acts and not an actionable tort in itself, the charge of conspiracy adds nothing to the complaint for alleged abuse of process. Ammons v. Jet Credit Sales, Inc., 34 Ill. App.2d 456, 465, 181 N.E.2d 601, 605 (1962).[2]

The judgment of the district court dismissing the action is affirmed. Because there is no basis for permitting the filing of an amended complaint, we will not remand the case.

---

2. In addition, the facts alleged do not warrant the conclusions pleaded that there was a conspiracy and, in fact, the history of the three state-court cases alleged in the complaint demonstrates that there was no conspiracy. The pleadings and actions in the state cases were made part of the record on appeal and in addition we can take judicial notice of them. Paul v. Dade County, 419 F.2d 10, 12 (5th Cir. 1969), cert. denied, 397 U.S. 1065, 90 S.Ct. 1504, 25 L.Ed.2d 686 (1970).