**ALBERTO–CULVER COMPANY,**
**Plaintiff,**

v.

**ANDREA DUMON, INC., Defendant.**

**Civ. A. No. 68 C 544.**

United States District Court
N. D. Illinois, E. D.
Jan. 31, 1969.

**1156**

Beverly W. Pattishall, Woodson, Pattishall & McAuliffe, Chicago, Ill., Robert D. Silver, Melrose Park, Ill., for plaintiff.

Edwin Luedeka and Dolores K. Hanna, Anderson, Luedeka, Fitch, Even & Tabin, David Chaimovitz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

### Motions of Plaintiff to Dismiss or, Alternatively, For Summary Judgment

MAROVITZ, District Judge.

This is an action for label copyright infringement, trademark infringement, unfair competition and dilution. The action arises out of defendant's use of a label for a deodorant spray for feminine hygiene allegedly copied from plaintiff's label for a similar product, and defendant's use of the letter trademark PS, alleged to be confusingly similar to plaintiff's trademark FDS.

Defendant's Answer basically denies the material allegations of the Complaint and pleads affirmative defenses.

Defendant has also filed two Counterclaims. The first claims that plaintiff has violated Section 2 of the Sherman Act, and the second claims abuse of process in the institution of the present action. Defendant's Counterclaim for violation of the Sherman Act is based on the conclusion that plaintiff has monopolized or attempted to monopolize the manufacture and sale of deodorant spray for feminine hygiene by (1) obtaining United States Trademark Registration No. 831,204 for FDS for deodorant spray for feminine hygiene by misrepresentation in submitting to the Patent Office labels which had not been used in commerce; (2) threatening defendant with suit and instituting suit for trademark infringement, unfair competition and dilution caused by defendant's adoption of its trademark PS and trade dress for a deodorant spray for feminine hygiene for the purpose of intimidating defendant and excluding it from the market; (3) disparaging defendant's product; and (4) filing suit against the Emko Company, another competitor of plaintiff in the manufacture and sale of deodorant spray for feminine hygiene to prevent the sale of such a spray by Emko.

Defendant's Second Counterclaim, for abuse of process, is based on the allegation that plaintiff brought this suit without reasonable cause and for the purpose of "intimidating defendant and wrongfully excluding defendant from the manufacture and sale of deodorant spray for feminine hygiene * * *."

Plaintiff has moved to dismiss defendant's First Counterclaim for violation of the Sherman Act on the ground that defendant fails to state a claim upon which relief can be granted in that defendant has failed to allege damage to itself arising from plaintiff's alleged acts. Plaintiff is correct in saying that in a private antitrust action, the complaining party must allege specific damage to itself arising from the allegedly wrongful acts of the party being sued. The requirement has long been recognized in this Circuit.

> "Section 15, (15 U.S.C. § 15), allowing private parties treble damages for injury accruing to their business from violation of the Anti-Trust Act, embraces, as one of the essentials to such action, injury to plaintiff's business. The complaint must affirmatively show this injury. It is not enough to allege something forbidden and claim damages resulting therefrom. Allegation of the specific injury suffered by plaintiff differing from that sustained by it as a member of the community is essential. The manner, nature, character and extent of the injury sustained and the facts from which injury accrues and upon which damages may be assessed as well as those with regard to the effect of the alleged violation upon plaintiff's business, must be pleaded. The mere existence of a violation is not sufficient ipso facto to support the action, for no party may properly seek to secure something from another without allegation and proof of facts demonstrating pecuniary loss springing from or consequent upon the unlawful act. (Citing cases)."

Beegle v. Thomson, 138 F.2d 875, 881 (7th Cir. 1943).

The only allegation of damage set forth in defendant's First Counterclaim is in Paragraph 56:

> "By reason of the acts of plaintiff performed in furtherance of its monopolization and attempt to monopolize in violation of Section 2 of the Sherman Act within the four years immediately preceding the filing of this counterclaim, defendant has been injured in its business or property in an amount not determined. An amendment of this counterclaim will be offered at or before trial stating the damage that has accrued to defendant."

This is really a generalization, a conclusory statement. In not specifying injury to defendant's business or property, the allegation appears insufficient. In other cases, anti-trust claims or counterclaims have been dismissed for similar lack of specificity. See, e. g., Merrimac Hat Corp. v. Crown Overall Mfg. Co., 91 F.Supp. 49, 52 (S.D.N.Y.1950), aff'd 186 F.2d 505 (2d Cir. 1951); Sheldon-Claire Co. v. Judson Roberts Co., 88 F. Supp. 120, 122 (S.D.N.Y.1949).

Defendant attempts to avoid the impact of these last cases by stating that they are from other jurisdictions and have been "overruled" in this circuit by Dairy Foods Inc. v. Dairy Maid Products Cooperative, 297 F.2d 805 (7th Cir. 1961). First, while we recognize that the various different circuits sometimes have developed different approaches to the similar problems, we do not think that situation, in itself, is a good thing or to be desired or encouraged. The federal law should be applied equally to all throughout the country. To that end, cases from other districts may prove useful as guiding precedents.

Second, we are not clear as to how *Dairy Foods* "overrules" the requirement for an allegation of specific damages. *Dairy Foods* began as a patent infringement action and defendant, in addition to contesting the validity and infringement of the patent, counterclaimed alleging patent misuse in violation of the Sherman Act. The District Court dismissed the counterclaim for failure to allege sufficient facts to show injury to business or property. The Court of Appeals reversed, holding that the defendant had adequately alleged an injury.

"The injury is the necessity that defendant make a choice among alternatives each of which has an adverse economic or financial impact on its instant milk business. It was allegedly compelled either to cease production with consequent loss of sales of the product, pay tribute with consequent increase in production cost, or incur the financial burden of expenses incident to the defense of litigation. Each of these alternatives had its particular adverse economic or financial effect on defendant's instant milk business. To place a person in such a situation is an injury to his business. True, it is the defendant's choice which determines the nature of the resulting damages but it is the necessity of having to choose from such alternatives that is the injury. The congressional enactments here involved were designed to afford a legal right to engage in business free from conspiratorial compulsion such as here alleged. A violation of that right is a legal injury to the business adversely affected. Section 4 of the Clayton Act by its reference to the person 'injured' recognizes that it is the 'injury' which gives rise to the consequent liability to respond in three-fold 'damages.' " 297 F.2d 808.

Neither this nor any other statement in *Dairy Foods* reduces or overrules the requirement to allege specific injury or damages. At the most, the *Dairy Foods* decision allows litigation expenses to be considered an element of the damages. It then merely holds that the allegations which were made were adequate. *Id.*

Defendant, then, argues that it, like the defendant in *Dairy Foods*, has been put to time and expense in defending a baseless suit. It argues that it has been improperly forced to choose between going out of the feminine deodorant spray business or surrendering valuable trademark rights. Yet, defendant's characterization of its plight is not an accurate one for the consequences of a label copyright or trademark infringement case are different than those of a patent infringement case. Where the defendant in *Dairy Foods* was in danger of being forced out of business, being deprived of a real opportunity to compete by virtue of accepting a restrictive patent license or defending the litigation, defendant in this case is not in such an onerous situation. Even if successful, plaintiff's suit could not exclude defendant from participating in the feminine hygiene market. Nor is plaintiff seeking to force defendant to subscribe to a licensing agreement.

Further, we note that the *Dairy Food* decision has been mentioned very rarely and then not uniformly or wholeheartedly received. Hazeltine Research, Inc. v. Zenith Radio Corp., 388 F.2d 25, 35 (7th Cir. 1967); American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977, 996–997 (8th Cir. 1966); Laitram Corp. v. Deepsouth Packing Co., 279 F. Supp. 883, 891 (E.D.La.1968); Malta Manufacturing Co. v. Osten, 215 F.Supp. 114, 122–123 (E.D.Mich.1963). No decision approving or following *Dairy Foods* is a trademark or copyright case. All are patent cases which, as we have pointed out, have the potentially unique consequence of excluding a party from a particular market.

Conversely, a District Court recently dismissed an action wherein plaintiff asked for damages for alleged anti-trust violations arising out of the use of his trademark on the ground that he failed to specify the extent of alleged injury. The Court's holding was a simple one.

"The failure to specify in the complaint the impact of defendant's wrongs on plaintiff renders an anti-trust allegation insufficient."

Sam S. Goldstein Industries, Inc. v. General Electric Co., 264 F.Supp. 403, 407 (S.D.N.Y.1967).

■ Even if we were to accept defendant's characterization of the alternatives available to it as an accurate one and even if we were to find that the *Dairy Foods* rationale applied to trademark and copyright situations, still we would have to dismiss the counterclaim.

The simple fact which distinguishes this case from *Dairy Foods* is the counter-claim in *Dairy Foods* specifically alleged the expenditure of time and money in defending the patent litigation while in the instant action no such allegation has been made. Dairy Foods Inc. v. Dairy Maid Products Coop., 297 F.2d 805, 808 (7th Cir. 1963). All that has been alleged by defendant in paragraph 56 of the counterclaim is that it has been injured. That is simply not enough under *Dairy Foods* or any other standard.

Plaintiff is, of course, asking that the defendant stop using its present trademark and label. Defendant's interest here may be a valuable one. However, once again, defendant has not specifically alleged that it has a valuable right or, if it has, the extent of its value. At best, it has promised to amend its counterclaim to state damages allegedly accrued.

In sum, we do not believe that the *Dairy Foods* decision is applicable to this, a non-patent case, or that defendant has met the standards set forth in the *Dairy Foods* case, in any event. For that reason, defendant's first counterclaim should be dismissed for failure to specifically allege damages. Consequently, it is not necessary to discuss defendant's allegations of anti-trust violations.

■ Defendant has suggested that plaintiff's motion to dismiss must be treated as a motion for summary judgment. Rule 12(b), Fed.R.Civ.P., provides that if matters outside the pleading are presented to the court in connection with a motion to dismiss for failure to state a claim upon which relief can be granted, the motion shall be treated as one for summary judgment. Plaintiff has submitted affidavits in this case. However, the evidence submitted by plaintiff is not related to the motion to dismiss which we have discussed. Rather, it is in support of plaintiff's alternative motion for summary judgment, which was submitted for consideration in the event that the motion to dismiss was denied. There is no authority for the position that Rule 12(b) precludes the effective use of alternative motions in these situations. Yet this would be the result of defendant's position for it would present movant with an option of filing an unsupported alternative summary judgment motion or foregoing an opportunity to present an alternative motion to dismiss.

Defendant's second counterclaim charges that plaintiff has abused the process of this court by employing process "for the purpose of excluding defendant from the manufacture or sale of deodorant spray for feminine hygiene." (Defendant's Second Counterclaim ¶ 66). Plaintiff has moved to dismiss this counterclaim on the ground that it fails to state a claim upon which relief can be granted.

■■ Since jurisdiction is based on diversity and the alleged abuse took place in Illinois, we must look to Illinois law to determine what constitutes an abuse of process. Erie Ry. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

"Abuse of process, sometimes called malicious abuse of process, is the misuse of legal process to accomplish some purpose outside the proper scope of the process itself. There are two essentials to an action for abuse of process: an ulterior purpose and an act in the use of legal process not proper in the regular prosecution of the proceedings. Dixon v. Smith-Wallace Shoe Co., 283 Ill. 234, 119 N.E. 265; Bonney v. King, 201 Ill. 47, 66 N.E. 377; Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 191 N.E.2d 601." March v. Cacioppo, 37 Ill.App.2d 235, 243, 185 N.E.2d 397, 401 (1962).

Accord, Caspers v. Chicago Real Estate Board, 58 Ill.App.2d 113, 120, 206 N.E. 2d 787 (1965).

Counterclaimant has repeatedly alleged an ulterior purpose on the part of Alberto-Culver "in filing and prosecuting this suit." (Defendant's Second

Counterclaim, ¶ 63). For instance, it alleges that plaintiff filed this suit without reasonable cause to believe there was any copyright infringement, but with the purpose and intent of intimidating and harassing defendant and excluding it from the feminine hygiene market. (*Id.* ¶¶ 64, 65, 66, 68).

 Yet, if defendant's counterclaim does charge an ulterior purpose, it fails to allege an improper act in the use of legal process. Defendant suggests that the institution of this suit is a sufficient act. (Defendant's Memorandum in Opposition to Plaintiff's Motion to Dismiss or For Summary Judgment, at 15). However, this is not enough.

> "Regular and legitimate use of process, though with bad intentions, is not a malicious abuse of process. The mere institution of civil suits, though groundless and malicious, does not constitute a malicious abuse of process. That action lies for the improper use of process after it has been issued, but not for maliciously causing process to be issued. The most common form of such abuse is by working upon the fears of a person after having him arrested, for the purpose of extorting money, or other property, or of compelling him to sign some paper, to give up some claim, to pay a debt or control of the prosecution. Bonney v. King, 201 Ill. 47, 66 N.E. 377; Jeffery v. Robbins, 73 Ill.App. 353; Emery v. Ginnan, 24 Ill.App. 65, supra."

Ruehl Bros. Brewing Co. v. Atlas Brewing Co., 187 Ill.App. 392, 397 (1914).

Accord, Bonney v. King, 201 Ill. 47, 51, 66 N.E. 377 (1903); John Allan Co. v. Brandow, 59 Ill.App.2d 328, 335, 207 N.E. 2d 339 (1965). Defendant has not alleged any action which plaintiff has taken against defendant other than or since the institution of this suit. It has not alleged an arrest or a seizure of property. Cf. John Allan Co. v. Brandow, 59 Ill.App.2d 328, 335, 207 N.E.2d 339 (1965). Consequently, it has alleged no improper act in the use of process.

 Because defendant has alleged that plaintiff started this suit without probable cause, the second counterclaim could be considered an action for the malicious use of process or malicious prosecution. Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 461–462, 181 N.E.2d 601 (1962). This action arises from an allegedly baseless demand or accusation. *Id.* However, "(i)n civil cases where actions for malicious prosecution do lie, one of the essentials which must be established is the legal termination of the prosecuted suit in the plaintiff's favor. (Citations omitted.)" *Id.* The suit brought by Alberto-Culver has not been terminated in Andrea Dumon's favor as yet, and, consequently, defendant's counterclaim, considered as an action for the malicious use of process, must fail.

Thus, viewed either as an action for abuse of process or malicious use of process, defendant's second counterclaim fails to state a cause of action against the plaintiff and must be dismissed.