HOLIDAY MAGIC, INC. *et al.*, Plaintiffs-Appellants, *v.* WILLIAM J. SCOTT *et al.*, Defendants-Appellees.

(No. 55792;

First District—February 22, 1972.

*Rehearing denied April 26, 1972.*

Jenner & Block, of Chicago, (Thomas P. Sullivan and Robert C. Keck, Jr., of counsel,) for appellants.

Freeman, Freeman & Salzman, of Chicago, (Lee A. Freeman and Jerrold E. Salzman, of counsel,) for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Holiday Magic, Inc., a California corporation; Masters & Generals Trust No. 101, doing business as Chicagoland Center; Earl Miller, Gene Amado and John Carr, Trustees (plaintiffs) filed an amended complaint for injunctive relief and damages against William J. Scott, individually, and as Attorney General of the State of Illinois; Allen A. Freeman, individually, and as Deputy Attorney General of the State of Illinois; and Robert S. Atkins, individually, and as Assistant Attorney General of the State of Illinois (defendants). The trial court sustained a motion by defendants to strike and dismiss the amended complaint and dismissed the suit with prejudice. Plaintiffs appeal.

■■ The facts appear from the properly pleaded allegations of the amended complaint, admitted by the motion to dismiss. (*Acorn Auto Driving School, Inc. v. Board of Education*, 27 Ill.2d 93, 96, 187 N.E.2d 722; *Follett's Illinois Book & Supply Store, Inc. v. Isaacs*, 27 Ill.2d 600, 603, 190 N.E.2d 324.) The amended complaint alleged in substance that plaintiffs were engaged in the business of selling and distributing a com-

plete line of cosmetics for both ladies and gentlemen throughout the United States. It alleged that the defendants made a "very brief, incomplete and inadequate" investigation of the business of plaintiffs to determine whether it was being operated in compliance with the law of Illinois. Plaintiffs alleged that, during the course of this investigation, the defendant Atkins ordered plaintiffs to change their methods of business operation and, "* * * further stated that if plaintiffs refused, he would take legal action on behalf of the Attorney General which would generate sufficient adverse publicity to 'kill' [Atkins' word] plaintiffs' business, even though such legal action might be groundless. Atkins stated that he was unsure of the correctness of his position in the threatened legal action and admitted that there was a good chance that he would lose the case."

It was further alleged that defendants then filed action against plaintiffs on August 14, 1969. A copy of this prior complaint is appended as an exhibit to the original complaint filed herein. This former complaint described the general manner in which plaintiffs herein conducted their business in Illinois. It charged plaintiffs in the cause at bar with four offenses against the law of Illinois: (1) conducting an illegal lottery (Ill. Rev. Stat. 1967, ch. 38, par. 28—2); (2) unlawful combination and conspiracy in restraint of trade (Ill. Rev. Stat. 1967, ch. 38, par. 60—3 (1)(a) and 60—3(2)); (3) the use of misleading and fraudulent misrepresentations in operation of their business in violation of the Consumer Fraud Act (Ill. Rev. Stat. 1967, ch. 121½, pars. 261 and following) and the Uniform Deceptive Practices Act (Ill. Rev. Stat. 1967, ch. 121½, pars. 311 and following); and 4) violations of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1967, ch. 121½, pars. 137.2 and following). This former complaint prayed injunctive and other relief against plaintiffs herein.

The gist or substance of the amended complaint herein appears from paragraph 7. This paragraph contains a series of allegations descriptive of the prior suit which may be summarized or quoted in the order in which they are set forth as follows:

(a) The prior suit was filed and, "used with an ulterior purpose." This was to punish plaintiffs by "killing" their business through the generation of adverse publicity. Defendants herein knew that the filing of such proceedings by the Attorney General would generate a large amount of adverse publicity which would seriously damage the business of plaintiffs.

(b) "After filing the lawsuit, defendants committed acts in the use of the process not proper in the regular prosecution of the proceeding. Defendants actively and knowingly gave wide publicity to the con-

tents of their complaint. Specifically, defendants caused a series of articles to appear in one of Chicago's major daily newspapers. Further, defendants made statements to members of the news media regarding the lawsuit which further tended to damage plaintiffs' business. Plaintiffs are informed and believe that defendants will continue to use this lawsuit to generate publicity adverse to plaintiffs' business."

(c) "Said lawsuit was brought without probable cause."

(d) "Said lawsuit was instituted by defendants with malice." This was demonstrated by the statement of defendant Atkins that he would file the suit to "kill" plaintiffs' business and punish plaintiffs even though the suit was groundless. In addition malice was demonstrated by the lack of adequate investigation prior to filing suit and by the existence of the ulterior purpose. It is alleged here on information and belief that Mrs. Hattie Atkins had invested in plaintiffs' program and was unable to recoup this investment. It is further alleged on information and belief that "* * * malice arose from Atkins' personal dislike for the people in the plaintiffs' business whom Atkins met prior to the filing * * *" of the previous suit.

The amended complaint also alleged that plaintiffs' business suffered extensive damage and that they were required to incur obligations for costs and attorney's fees. It alleged that the pendency of the previous case caused emotional embarrassment and distress to plaintiffs and their families and required them to expend substantial amounts of time which they would otherwise have devoted to income producing matters. The amended complaint prayed large amounts of damages and punitive damages against defendants, temporary and permanent injunctions restraining defendants from making public or private statements "to the news media" about plaintiffs and restraining defendants from prosecuting the previous suit and also for general relief.

Seven separate grounds are specified in the motion of defendants to strike and dismiss. Under the view we take of this appeal, only the third ground need be considered. This ground is that the amended complaint fails to state a cause of action in that no facts are alleged involving misuse or abuse of process. In addition, this portion of the motion states that the amended complaint fails to state a cause of action for malicious prosecution because the allegations of malice, lack of probable cause and existence of ulterior purpose are only conclusions and not allegations of fact and that the essential allegation that the prior action was terminated in favor of defendants therein is lacking. Ill. Rev. Stat. 1969, ch. 110, par. 45(1) (2).

In their briefs filed in this court, plaintiffs contend: 1) The amended complaint states a good cause of action for abuse of process. 2) The

amended complaint was actionable even if it does not state such a cause of action. 3) Defendants cannot claim immunity by virtue of their public offices. 4) The injunctive relief prayed in the amended complaint is appropriate. Under the view which we take of this appeal, it is necessary to consider only the first two points.

■■ In determining the sufficiency of the amended complaint, we will obey the clear statutory mandate that it is to "* * * be liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1969, ch. 110, par. 33(3).) However, to accomplish this purpose, we must determine if the amended complaint contains those "* * * substantial averments of fact necessary to state a cause of action." (See *Fanning v. LeMay*, 38 Ill.2d 209, 211, 230 N.E.2d 182, citing Ill. Rev. Stat. 1965, ch. 110, par. 31.) This determination requires us to examine the definition and nature of the classic tort known as abuse of process.

■■ This definition is best approached by comparing abuse of process with malicious prosecution. In numerous decisions, the courts of Illinois have stated and defined the requisite elements of malicious prosecution as follows (*Franklin v. Grossinger Motor Sales Inc.*, 122 Ill.App.2d 391, 397, 259 N.E.2d 307; also *Freides v. Sani-Mode Manufacturing Co.*, 33 Ill.2d 291, 295, 211 N.E.2d 286):

1. Institution and prosecution of judicial proceedings by the defendant.
2. Lack of probable cause for these proceedings.
3. Malice in instituting the proceedings.
4. Termination of the prior cause in plaintiff's favor.
5. Suffering by plaintiff of damage or injury from the prior proceeding.

Certain of these elements, however, are not requisites of the tort of abuse of process. The requirements that the prior proceeding be terminated in plaintiff's favor, the necessity of proof of lack of probable cause for the former case and the need to allege malice in the complaint are not essential elements of abuse of process. See *Dixon v. Smith-Wallace Shoe Co.*, 283 Ill. 234, 241, 119 N.E. 265 and *Wicker v. Hotchkiss*, 62 Ill. 107, 110. See also *Coplea v. Bybee*, 290 Ill.App. 117, 125, 8 N.E.2d 55.

■■ Therefore, a statement of the two remaining elements, which alone form the requisites of the tort of abuse of process, is comparatively simple. The elements are:

1. Existence of an ulterior purpose or motive, and
2. Some act in the use of the legal process not proper in the regular prosecution of the proceedings.

These elements have been defined and described in many Illinois cases.

(*Ammons v. Jet Credit Sales Inc.,* 34 Ill.App.2d 456, 462, 181 N.E.2d 601. See also *Alberto-Culver Co. v. Andrea Dumon, Inc.,* 295 F.Supp. 1155, 1159.) The Illinois case most frequently cited in this regard is *Bonney v. King,* 201 Ill. 47, 66 N.E. 377.

■■ The second stated element regarding the need for misuse or misapplication of process is essential to the maintenance of the action. It has been repeatedly held in Illinois that mere institution of proceedings does not in and of itself constitute abuse of process. Some act must be alleged whereby there has been a misuse or perversion of the process of the court. It is the settled law of Illinois that mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process. This appears from the authorities above cited as well as from a number of other decisions. Perhaps the best exposition of the principle is that contained in *Bonney v. King,* 201 Ill. 47, 51, 66 N.E. 377:

"Two elements are necessary to an action for the malicious abuse of legal process: First, the existence of an ulterior purpose; and second, an act in the use of the process not proper in the regular prosecution of the proceeding. Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process."

Application of this established principle to the amended complaint is immediately and decisively illustrative of its deficiency. The amended complaint alleged, as a mere conclusion, that the prior suit was filed and used with an ulterior purpose. It alleged that defendants herein knew that the filing of such suit would cause adverse publicity to the damage of plaintiffs. But, even assuming that these allegations are sufficient properly to allege the existence of an ulterior purpose, there is no allegation regarding any act in the use of process that was not proper in the regular prosecution of the proceedings; and, in fact, no allegation regarding any use of process.

Paragraph 7(b) of the amended complaint alleges that defendants gave wide publicity to the contents of their complaint; that they caused a series of articles to appear in the newspaper and that they made statements to personnel of the news media regarding the lawsuit. None of this alleged conduct relates to abuse, or even to use, of the process of the court. Under no circumstances can these allegations, or any other allegations in the amended complaint, be construed as constituting any improper use, or even any use, of the process of the court. The gist of the tort of abuse of process is contained within its title. An actionable tort does not exist unless there is some improper use of the process of the court. For example, in *Shatz v. Paul,* 7 Ill.App.2d 223, 129 N.E.2d 348, the court found an abuse of process in repeated and successive use

by defendant of the writ of *capias ad respondendum* against plaintiff for the purpose of compelling plaintiff to borrow money to pay his debts. (See 7 Ill.App.2d 223 at 238). There, plaintiff had been arrested four times and defendants threatened additional arrests upon six more invoices held by them (see page 227).

■■ In this regard, it is essential to recall the precise definition of the word "process." This apparently simple term has been the subject of varying definitions from ancient times. See Black's Law Dictionary, Fourth Edition, pages 1370 and following under the heading "Process." Upon careful consideration of the varying elements in the definitions used in other states, we would define process as any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property.

■■ There is no allegation in the amended complaint regarding any use of summons or other process by these defendants in their prior action. The generation of publicity by the filing of a complaint and the issuance of statements to the news media cannot be construed as having any relation to process of the court. Pleading must be distinguished from process. Pleadings are created and filed by the litigants. Process is issued by the court, under its official seal. The Civil Practice Act and the Rules of the Supreme Court devote entirely separate sections to pleading and to process. Compare Civil Practice Act Article III to Article VI; also Supreme Court Rules Article II Part A to Article II Part B.

The authority primarily relied upon by plaintiffs in support of their rather unique theory that the filing of a complaint plus the generation of unfavorable publicity may constitute abuse of process is *Cardy v. Maxwell,* 169 N.Y.Supp.2d 547. We cannot accept this decision by a lower court of New York as persuasive authority for these reasons:

1. The facts in *Cardy* are diversely different from the case at bar. There, defendants "\* \* \* threatened plaintiff with adverse newspaper publicity unless he paid several million dollars to them to withhold further action by them. \* \* \* The pleading alleges that all the defendants participated in a conspiracy to force plaintiff to pay them money to escape adverse publicity rather than defend the action." (169 N.Y.Supp.2d 547 at pages 549 and 550). As noted by the court, blackmail and extortion were thus alleged.

2. *Cardy* sets out the settled law of New York to the effect that the gist of the tort of abuse of process "\* \* \* is the improper use of the process, *after its issuance,* to achieve a collateral, improper purpose." (169 N.Y.Supp.2d 547 at page 549 citing *Rubenstein v. Rubenstein,* 35 N.Y.Supp.2d 926.) Thus, *Cardy* is actually a legal anomaly.

3. The law of the State of New York requires that we affirm dismissal of the amended complaint in the case at bar. In *Williams v. Williams,* 23 N.Y.2d 592, decided by the Court of Appeals of New York in 1969, plaintiff alleged that the prior proceeding "* * * was totally without basis in fact and was begun solely for the purpose of ruining his business reputation by widespread publication of the complaint." (23 N.Y.2d 592 at 596.) The case is decisively similar to the situation at bar. At the same page, we find the following language:

"We agree with defendant that the complaint does not state a cause of action for abuse of process. The gist of the action for abuse of process lies in the improper use of process after it is issued. (*Dean v. Kochendorfer,* 237 N.Y. 384, 390; *Hauser v. Bartow,* 273 N.Y. 370.) Process is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act.' (*Matter of Smith,* 175 Misc. 688, 692—693.) It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie. We find no such interference in this case."

■■■ It follows from the above that the amended complaint is deficient in substance. It contains no allegation regarding any use of process by defendants. It follows also that this defect cannot be remedied by averments concerning generation of publicity concerning the previous proceedings even if accomplished with improper motives. However, the propriety of the order appealed from rests upon a multiple foundation. It is supported by another cogent and ample principle.

■■ We have seen that the mere use of process by itself is not tortious. To constitute an abuse of the process in the legal sense, there must be some act in use of the process which is not proper in the regular course of the proceedings. This element has been generally defined by the courts of Illinois as existing only in instances in which plaintiff has suffered an actual arrest or a seizure of property. (See *John Allan Co. v. Brandow,* 59 Ill.App.2d 328, 207 N.E.2d 339; *Alberto-Culver Company v. Andrea Dumon, Inc.,* 295 F.Supp. 1155.) We note also the exposition of the identical rule by the Court of Appeals of New York in 1969 in *Williams,* cited above. It appears that the majority of American courts are in accord. (1 Am.Jur.2d Abuse of Process Sec. 4 at pages 253 and 254; 72 C.J.S. Process Sec. 120 at page 1190.) This court also approves the general rule as stated and we hold that it provides another reason complete in itself for affirming the judgment appealed from. It may well be that in a proper factual context a fraudulent and malicious manipulation of service of summons could itself constitute abuse of process; but, of course, no such problem is presented by this record.

We conclude that the amended complaint fails to state a cause of action and that it was properly dismissed by the trial court. However, plaintiffs urge that actionable wrongs which require remedy have been committed against them and they cite and depend upon Article I, Section 12, of the Illinois Constitution of 1970 as a basis for judicial relief. The language of that portion of the Constitution is:

"Every person shall find a certain remedy in the law for all injuries and wrongs which he receives to his person, privacy, property or reputation."

Defendants properly point out in response that the alleged wrongs described by plaintiffs all took place prior to the effective date of Article I, Section 12, of the Illinois Constitution of 1970. It is correct that Section 2 of the Transition Schedule of the Constitution of 1970 provides that all rights created by Article I shall be prospective and not retroactive. In addition, this same argument advanced and depended upon by plaintiffs has been previously rejected by the courts of review of Illinois. See *Bonney v. King*, 201 Ill. 47, 51, 66 N.E. 377. See also *Bauscher v. City of Freeport*, 103 Ill.App.2d 372, 376, 243 N.E.2d 650 and other authorities there cited.

■ ■ However, as a final and complete disposition of this contention, we are obliged to hold that we may not consider this constitutional question upon review because it was not presented to and decided by the trial court. (*Smith v. Glowacki*, 122 Ill.App.2d 336, 340, 258 N.E.2d 591. Also, *Thompson v. Board of Commissioners*, (Ill.App.2d), 268 N.E.2d 570.) The judgment of the trial court dismissing the amended complaint with prejudice is affirmed.

Judgment affirmed.

BURKE and LYONS, JJ., concur.