Addison Whitney, LLC v. Cashion, 2017 NCBC 109.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

ADDISON WHITNEY, LLC,

        Plaintiff,

v.

BRANNON CASHION; VINCENT
BUDD; RANDALL SCOTT;
ANDREW CUYKENDALL; AMY
BAYNARD; JENNIFER RODDEN;
and LEADERBOARD BRANDING,
LLC,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1956

**ORDER AND OPINION
ON PLAINTIFF'S RENEWED
PARTIAL MOTION TO DISMISS**

1.      This is the Court's third opinion in this dispute between Plaintiff Addison Whitney, LLC and six of its former high-level officers and employees. In response to the complaint, Defendants assert five counterclaims, most of which rest on allegations that Addison Whitney is defaming them and improperly attempting to stifle their new business, Leaderboard Branding, LLC. Addison Whitney moves to dismiss four of the counterclaims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Having considered the motion, the briefs supporting and opposing the motion, and the parties' arguments at the hearing on November 8, 2017, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss.

> *Littler Mendelson, P.C., by Michael Scott McDonald, Allan H. Neighbors, IV, Stephen D. Dellinger, Elise Hofer McKelvey, and Steven A. Nigh, for Plaintiff.*

> *Van Hoy, Reutlinger, Adams & Dunn, PLLC, by G. Bryan Adams, III, for Defendants.*

Conrad, Judge.

# I.
# BACKGROUND

2.     The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the counterclaims. Additional background, including the allegations in Addison Whitney's complaint, appears in *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51 (N.C. Super. Ct. Jun. 9, 2017).

3.     Addison Whitney, a North Carolina company, "is engaged in the business of verbal branding, visual branding, branding strategy, and research and analysis." (Answer to 2d Am. Compl. and Countercl. ["Countercl."] ¶¶ 8, 10, ECF No. 80.) Addison Whitney is a subsidiary of inVentiv Health, Inc. ("inVentiv"). (Countercl. ¶ 26.)

4.     Individual Defendants Brannon Cashion, Vincent Budd, Randall Scott, Andrew Cuykendall, Amy Baynard, and Jennifer Rodden are former officers and employees of Addison Whitney. (Countercl. ¶¶ 11–16.) The individual Defendants tendered their resignations on January 21, 2017. (Countercl. ¶¶ 11–16.) After resigning, the individual Defendants created Leaderboard Branding, LLC to compete with Addison Whitney. (Countercl. ¶ 7.)

5.     In the weeks leading up to his resignation, Cashion discussed the possibility of a management buyout of Addison Whitney with Dan Jones, an employee of "one of the private equity sponsors" of inVentiv. (Countercl. ¶ 26.) These discussions were "positive and productive" although no formal offers or proposals

were tendered. (Countercl. ¶ 26.) Cashion also informed Jones "that he and several other employees were considering leaving Addison Whitney." (Countercl. ¶ 26.)

6. On January 20, 2017, Jones opined that the management buyout would not work because "'95 % plus' of such deals are never successfully completed." (Countercl. ¶ 28.) The individual Defendants resigned from Addison Whitney the next day, prompting Jones to contact Cashion again. (*See* Countercl. ¶¶ 29, 32.) Jones encouraged Cashion to speak directly with inVentiv's CEO, Mike Bell, to propose a management buyout. (Countercl. ¶ 32.)

7. Cashion did so. (*See* Countercl. ¶ 32.) On January 23, the two men had an uneasy conversation, in which Cashion tried to assure Bell that the individual Defendants wished "to negotiate in good faith." (Countercl. ¶ 33.) Bell responded that they were "holding Addison Whitney hostage," and he warned that "things could escalate into 'thermonuclear warfare' and alternately threatened a 'nuclear option.'" (Countercl. ¶ 33.) Despite their differences, Bell invited Cashion to discuss the possibility of a management buyout in person. (Countercl. ¶ 33.)

8. Cashion met with Bell and other executives in Boston on January 25, and Addison Whitney made a formal buyout proposal. (Countercl. ¶¶ 34–35.) The individual Defendants submitted their counteroffer the following afternoon, on January 26. (Countercl. ¶ 36.) A few hours later, Addison Whitney cut off discussions, and "the Individual Defendants began receiving cease and desist letters from Addison Whitney's counsel." (Countercl. ¶ 37.)

9. According to Defendants, the end of the buyout negotiations marked the beginning of a campaign by Addison Whitney to punish the individual Defendants and to stifle their new business. On January 30, 2017, Addison Whitney initiated this action against the individual Defendants, followed a few days later by a motion for a preliminary injunction. (*See* Compl., ECF No. 1; Mot. for TRO and/or Prelim. Inj., ECF No. 5.1.) Addison Whitney sought to enjoin Defendants from using, disclosing, or otherwise misappropriating its confidential information and trade secrets; from soliciting or encouraging employees to leave the company; and from competing against Addison Whitney. (*See* Mot. for TRO and/or Prelim. Inj.) On March 15, 2017, the Court granted the motion with respect to misappropriation of trade secrets and confidential information but denied it in all other respects. *See generally Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 23 (N.C. Super. Ct. Mar. 15, 2017).

10. After this ruling, Addison Whitney created a press release, which Defendants allege "was incomplete, misleading, deceptive and was not a fair and accurate description of the" Court's March 15 Order and Opinion. (Countercl. ¶ 51.) According to Defendants, the press release includes statements "designed to malign the reputations of the Defendants in their trade or profession, to imply that they had committed crimes, and to damage their ability to secure potential customers for their business." (Countercl. ¶ 52.) In addition, Addison Whitney initiated "a targeted pay per click Google AdWords campaign," such that when any person "conducts a Google search on the internet for the Defendants or Leaderboard, the first item that appears

on the search results is a link" that directs to the press release. (Countercl. ¶ 53.) Addison Whitney published the press release on May 1, 2017, after which the AdWords campaign became active. (Countercl. ¶ 55.)

11.     Addison Whitney has since "discourag[ed] its clients and other companies seeking branding services . . . from engaging in business with the Defendants." (Countercl. ¶ 66.) Several prospective customers have decided not to do business with Defendants, citing the press release and internet search results associated with Addison Whitney's AdWords campaign. (Countercl. ¶ 86; *see also* Countercl. ¶¶ 87–92.)

12.     Defendants further allege that a company affiliated with Addison Whitney launched satellite litigation as part of a plan "to force the Defendants to fight litigation on two fronts." (Countercl. ¶ 65.) This second lawsuit, filed by inVentiv Health Communications, Inc. ("IHC") in Ohio, alleges that Rodden has violated a non-compete agreement contained in IHC's "Code of Ethics and Business Conduct." (Countercl. ¶ 59.) The Ohio court awarded IHC a temporary restraining order prohibiting Rodden "from engaging in competition against IHC." (Countercl. ¶ 63.)

13.     On April 28, 2017, Defendants filed their answer along with counterclaims for abuse of process, defamation, tortious interference with prospective business relations, violation of N.C. Gen. Stat. § 75-1.1, and violation of the North Carolina Wage and Hour Act. Addison Whitney moved to dismiss all of the counterclaims except for the Wage and Hour Act claim. (*See* Pl.'s Partial Mot. to Dismiss, ECF No. 47.) On July 13, 2017, the Court granted leave for Addison Whitney to amend its

complaint, granted leave for Defendants to amend the counterclaims, and denied the motion to dismiss as moot "without prejudice to Plaintiff's right to challenge the amended counterclaims through a future Rule 12 motion." (Or. Grant. Mot. to Am. at ¶ 3.b, ECF No. 75.)

14. After Defendants filed their amended counterclaims, Addison Whitney renewed its motion to dismiss on August 16, 2017. The motion has been fully briefed, and the Court held a hearing on November 8, 2017. The motion is ripe for determination.

II.
ANALYSIS

15. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency" of the claims for relief. *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the counterclaims as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). The motion should be granted only (1) when the defendant's pleading on its face reveals that no law supports the counterclaim; (2) when the pleading on its face reveals the absence of fact sufficient to make a good claim; or (3) when some fact disclosed in the pleading

necessarily defeats the counterclaim. *See Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

## A. <u>Abuse of Process</u>

16. The tort of abuse of process is narrow in scope. It "consists in the malicious misuse or perversion of a civil or criminal writ to accomplish some purpose not warranted or commanded by the writ." *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955). A claim for abuse of process requires two "essential elements": "the existence of an ulterior purpose" and "an act in the use of the process not proper in the regular prosecution of the proceeding." *Id.* at 431, 88 S.E.2d 227–28; *see also Stanback v. Stanback*, 297 N.C. 181, 201, 254 S.E.2d 611, 624 (1979).

17. According to Defendants, Addison Whitney initiated this action for the ulterior purpose of "stifling and impeding the Defendants' ability to lawfully compete against it." (Countercl. ¶ 43.) Defendants point to the fact that, after initiating suit, Addison Whitney immediately sought to enjoin them from competing against Addison Whitney for a period of one year. (Countercl. ¶ 44.) After the Court denied this request, Defendants contend, Addison Whitney took additional steps to stifle competition. Addison Whitney publicized aspects of the Court's preliminary-injunction Order—the portions enjoining the misappropriation of trade secrets—through a press release and Google AdWords campaign targeted toward potential customers of Defendants. (Countercl. ¶ 52.) In addition, an affiliate of Addison Whitney, IHC, filed a separate lawsuit in Ohio against Rodden and obtained a

temporary restraining order prohibiting her "from engaging in competition against IHC." (Countercl. ¶ 63.)

18. Addison Whitney does not dispute that these allegations, taken as true, show an ulterior purpose. Rather, it urges the Court to dismiss the claim because none of the allegedly wrongful acts constitute "an act not proper in the regular prosecution of the proceeding." (Mem. of Law in Supp. of Pl.'s Renewed Partial Mot. to Dismiss 6 ["Mem. in Supp."], ECF No. 82.)

19. The Court agrees. "The gist of an action for abuse of process is the *improper use of the process* after it has been issued." *Mfrs. & Jobbers Fin. Corp. v. Lane*, 221 N.C. 189, 196, 19 S.E.2d 849, 853 (1942) (emphasis added). "Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." *Melton v. Rickman*, 225 N.C. 700, 704, 36 S.E.2d 276, 278 (1945). Rather, the complainant must allege the commission of "some wilful act" as a means "to gain advantage . . . in respect to some collateral matter." *Stanback*, 297 N.C. at 201, 254 S.E.2d at 624. Typically, the requisite acts involve the misuse of procedures such as "discovery, subpoenas, and attachment." *Simon v. Navon*, 71 F.3d 9, 15 (1st Cir. 1995) (citations omitted); *see also Hewes v. Wolfe*, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985) (act requirement satisfied by malicious filing of notices of *lis pendens*); *cf. DDM&S Holdings, LLC v. Doc Watson Enters., LLC*, 2016 NCBC LEXIS 88, *9– 10 (N.C. Super. Ct. Nov. 10, 2016) (following *Hewes* and finding "preservation of evidence letter" to satisfy act requirement).

20. Defendants have alleged nothing of the sort. Rather, Defendants rely on three specific acts that are not a misuse of legal process: (1) Addison Whitney's motion for preliminary injunction in this lawsuit; (2) the press release and Google AdWords campaign; and (3) IHC's Ohio lawsuit against Rodden.

21. Defendants' reliance on Addison Whitney's motion for a preliminary injunction is misplaced because "[t]here is no abuse of process where [the process] is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." *Stanback*, 297 N.C. at 201, 254 S.E.2d at 624 (quoting *Mfrs. & Jobbers Fin. Corp.*, 221 N.C. at 196–97, 19 S.E.2d at 853).

22. Addison Whitney's original complaint asserted claims for misappropriation of trade secrets, breach of certain non-solicitation agreements, and breach of fiduciary duty. (*See* Compl. ¶¶ 111–46, 155–65.) Pursuing injunctive relief is regular and proper in the course of an action based on these claims. *See, e.g.*, N.C. Gen. Stat. § 66-154(a) ("actual or threatened misappropriation of a trade secret may be preliminarily enjoined"); *Horner Int'l Co. v. McKoy*, 232 N.C. App. 559, 570, 754 S.E.2d 852, 860 (2014) (affirming "the trial court's grant of a preliminary injunction" for a misappropriation of trade secrets claim); *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 147 N.C. App. 463, 471, 556 S.E.2d 331, 336 (2001) (holding "that the trial court correctly granted a preliminary injunction enforcing the non-compete, non-solicitation, and non-disclosure provisions of the employment agreement"); *Lake House Acad. for Girls LLC v. Jennings*, 2011 NCBC LEXIS 41, at *1, 21–23 (N.C.

Super. Ct. Oct. 13, 2011) (granting motion for preliminary injunction based on claim for breach of fiduciary duty).

23. Defendants insist, however, that Addison Whitney's motion was improper because it knew it had no basis to enjoin Defendants from starting a competing business. To support their argument, Defendants note that the Court denied Addison Whitney's motion in part. (*See* Defs.' Resp. in Opp'n to Pl.'s Renewed Partial Mot. to Dismiss 4 ["Defs.' Resp."], ECF No. 91.) But the test for abuse of process is not whether a party succeeds or fails on the merits of its claim. And to the extent Addison Whitney sought an injunction that was too broad, Defendants received their remedy when the Court denied that aspect of the motion. *See, e.g.*, *Sara Lee Corp. v. Pro Sports Inc.*, No. 1:03-CV-00276, 2004 U.S. Dist. LEXIS 4194, at *13–14 (M.D.N.C. Mar. 12, 2014) (denying motion to add claim for abuse of process as futile based on allegation that party was "asserting a claim of a greater trademark right than it actually has").

24. Defendants' reliance on Addison Whitney's press release and Google AdWords campaign also fails because those acts do not involve "the use *of the legal process*" at all. *Stanback*, 297 N.C. at 201, 254 S.E.2d at 624 (emphasis added); *see also Legal Process*, Black's Law Dictionary (10th ed. 2014) ("A summons or writ, esp. to appear or respond in court"). Even taking Defendants' allegations as true, out-of-court acts designed to generate negative publicity about a litigant are not the type of acts that give rise to a claim for abuse of process. Indeed, the Court is not aware of any authority for the proposition that "the filing of a complaint plus the generation

of unfavorable publicity may constitute abuse of process." *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 457 (Ill. App. Ct. 1972) (applying Illinois law).

25. In *Holiday Magic*, the plaintiffs alleged that the defendants had filed a previous lawsuit with the goal of generating sufficient adverse publicity to "kill" plaintiffs' business. *Id.* at 453. To accomplish that goal, the defendants widely publicized their complaint and "caused a series of articles to appear in one of Chicago's major daily newspapers." *Id.* at 454. The Illinois Court of Appeals affirmed the dismissal of plaintiffs' claim for abuse of process on the ground that these actions cannot "be construed as constituting any improper use, or even any use, of the process of the court." *Id.* at 456.

26. The Court finds this reasoning persuasive and consistent with North Carolina law. *See Williams v. Imeni*, No. 5:16-CV-516-FL, 2017 U.S. Dist. LEXIS 77791, at \*22 (E.D.N.C. May 23, 2017) (applying North Carolina law and holding that acts of "extortion and harassment were not acts 'in the use of the legal process'"). It is also consistent with numerous decisions of other courts. *See, e.g., Ancier v. Egan*, No. 14-00294 JMS-RLP, 2014 U.S. Dist. LEXIS 167319, at \*19 (D. Haw. Dec. 3, 2014) ("press conference" and "media campaign" insufficient); *Sands v. Living Word Fellowship*, 34 P.3d 955, 961 (Alaska 2001) ("publicization" of "public allegations and documents" insufficient); *Beacon Journal Publ'g Co. v. Zonak, Poulos & Cain*, No. 79AP-123, 1979 Ohio App. LEXIS 11795, at \*6–7 (Ohio Ct. App. Sept. 25, 1979) ("out-of-court press conferences" insufficient "even though some other actionable tort might be committed by such action"); *see also Analytic Sys. Corp. v. Holmgren*, No. 82 Civ.

2448 (RWS), 1983 U.S. Dist. LEXIS 16560, at *4 (S.D.N.Y. June 1, 1983) ("The mere dissemination of information concerning a lawsuit does not constitute process.").

27.     Addison Whitney has cited no case law to the contrary. Accordingly, the allegations related to Addison Whitney's press release and AdWords campaign, even if conducted for a wrongful purpose, are insufficient to satisfy the act requirement.

28.     Nor does the Ohio lawsuit against Rodden satisfy the act requirement. The Ohio lawsuit was filed by *IHC*, not *Addison Whitney*. Although Defendants allege that Addison Whitney and IHC are affiliated, they have not alleged any legally sufficient basis to impute IHC's actions to Addison Whitney. (*See* Countercl. ¶ 59.) Defendants cite no case law holding that the act requirement may be satisfied by the actions of a third party. *See Stanback*, 297 N.C. at 201, 254 S.E.2d at 624 (holding that act requirement is satisfied when "the *defendant* committed some wilful act" (emphasis added)).

29.     Finally, the Court notes that Defendants also allege a second ulterior purpose for this lawsuit: that Addison Whitney "intends to use this litigation as a vehicle for learning confidential competitive information about the Defendants' business." (Countercl. ¶ 49.) "Evil purpose alone is not sufficient," however, and Defendants do not allege any act in furtherance of this ulterior purpose. *Melton v. Rickman*, 225 N.C. 700, 704, 36 S.E.2d 276, 278 (1945).

30.     The Court therefore concludes that Defendants have not adequately alleged an act in the use of the legal process not proper in the regular prosecution of the proceeding. Defendants' claim for abuse of process is dismissed with prejudice.

## B. Defamation

31. To state a claim for defamation, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 897 (2002). "Although every defamation must be false, not every falsehood is defamatory." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 319, 312 S.E.2d 405, 410 (1984). "North Carolina has long recognized the harm that can result from false statements that impeach a person in that person's trade or profession—such statements are deemed defamation per se." *Kingsdown, Inc. v. Hinshaw*, 2016 NCBC LEXIS 15, at *51 (N.C. Super. Ct. Feb. 17, 2016) (quoting *Nguyen v. Taylor*, 219 N.C. App. 1, 8, 723 S.E.2d 551, 557–58 (2012)).

32. Claims for defamation are subject to heightened pleading requirements. The claimant must recite the defamatory statement verbatim "or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 84, 266 S.E.2d 861, 866 (1980). In addition, the claimant "must state the time and place of the alleged defamatory communication." *Esancy v. Quinn*, No. 5:05CV26, 2006 U.S. Dist. LEXIS 8479, at *13 (W.D.N.C. Feb. 10, 2006); *see also* N.C. R. Civ. P. 9(f). In other words, the relevant pleading must allege "who said what to whom, as well as when and where the defamatory statements were made." *Gosnell v. Reid*, No. 5:14CV179-RLV, 2015 U.S. Dist. LEXIS 96878, at *21 (W.D.N.C. July 24, 2015), *aff'd by Gosnell v. Catawba Cty.*, 646 F. App'x 318 (4th Cir. 2016).

33. Defendants base their defamation claim on two courses of conduct by Addison Whitney: (1) that agents or employees of Addison Whitney stated to "its own customers" and to companies that might "be interested in conducting business with the Defendants that Defendants cannot be trusted to maintain the confidentiality of the customers' and companies' sensitive business information"; and (2) that Addison Whitney's press release and Google AdWords search campaign mischaracterized the Court's preliminary-injunction Order. (Countercl. ¶¶ 72, 74.) Addison Whitney urges the Court to dismiss the claim on the ground that these allegations are not sufficiently particular. (Mem. in Supp. 8–9; Reply in Supp. of Pl.s' Partial Mot. to Dismiss 6, ECF No. 92.)

34. The first allegation—that Addison Whitney's agents or employees stated that Defendants cannot be trusted with confidential information—is facially inadequate. Defendants do not identify the agents or employees who made the allegedly defamatory statements, do not identify the individuals to whom the statements were made, and fail to allege when or where the statements were made. (*See* Countercl. ¶ 74.) The allegation lacks meaningful particularity and cannot support the defamation claim. *See, e.g.*, *Wynn v. Tyrrell Cty. Bd. of Educ.*, No. COA16-1130, 2017 N.C. App. LEXIS 358, at *8–9 (N.C. Ct. App. 2017) (unpublished) (affirming dismissal of defamation claim when the plaintiff failed to identify "which members of the Board made the allegedly defamatory statement" and did "not even hint at the time or the place of the alleged defamatory statements").

35. The allegations regarding Addison Whitney's press release and Google AdWords campaign, however, are sufficiently particular to state a claim for defamation. Defendants expressly quote the allegedly false statements. (Counctercl. ¶¶ 52–53 ("Evidence further showed that the defendants accessed servers for the purposes of furthering their competing business.").) In addition, Defendants allege that Addison Whitney is the speaker, the press release was made public "on May 1, 2017," the "Google AdWords campaign went 'live' after issuance of the press release," and specific customers received the press release and internet ads. (Councercl. ¶¶ 55, 86, 87.) Thus, Defendants have alleged "who said what to whom, as well as when and where the defamatory statements were made." *Gosnell*, 2015 U.S. Dist. LEXIS 96878, at *21.

36. In its motion, Addison Whitney makes no argument—and the Court therefore renders no decision—regarding whether the quoted statement is, in fact, defamatory. Instead, Addison Whitney briefly argues that the defamation claim is too "vague" and allowing it to proceed "would be chilling Addison Whitney's free speech rights guaranteed by the First Amendment and North Carolina's Declaration of Rights free speech protection." (Mem. in Supp. 15.) In support, Addison Whitney cites a federal district court case that dismissed a defamation claim on the ground that the allegedly defamatory statement was "not subject to objective verification." *Balt. Sports & Soc. Club, Inc. v. Sport & Soc., LLC*, 228 F. Supp. 3d 544, 551 (D. Md. 2017) (quotation marks omitted). This rationale is inapplicable because the press release quotation appears to be a factual statement subject to objective verification.

37. Accordingly, to the extent based on allegations related to the press release and the associated Google AdWords campaign, Defendants' defamation claim is stated with sufficient particularity and is not so vague as to require dismissal on First Amendment grounds. The Court denies Addison Whitney's motion to dismiss the claim for defamation.

C. Tortious Interference with Prospective Economic Advantage

38. Tortious interference with prospective economic advantage occurs when a defendant, without justification, "induce[s] a third party to refrain from entering into a contract with [the] [p]laintiff" that the third party would have entered into but for the defendant's interference. *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002). Thus, "an action for tortious interference with prospective economic advantage may be based on conduct which prevents the making of contracts." *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992).

39. This claim is closely related to Defendants' claim for defamation. As alleged, Addison Whitney "has damaged and interfered with Defendants' ability to enter into business relationships" by issuing and publicizing the allegedly false press release. (Countercl. ¶ 85.) According to Defendants, several prospective customers "have cited the results of Addison Whitney's Google AdWords campaign and the information contained therein as their reason for not going forward with doing business with the Defendants." (Countercl. ¶ 86.)

40. Addison Whitney maintains, first, that the Court should dismiss this claim because Defendants do not identify any specific customers or contracts. (Mem. in

Supp. 10–11.) The Court disagrees. Defendants have identified six specific companies, along with details regarding the business opportunities discussed with each. (Defs.' Resp. 19.) For example, according to Defendants, one "pharmaceutical company in Massachusetts . . . was on the verge of committing to do business with the Defendants" before discovering internet search results associated with Addison Whitney's Google AdWords campaign. (Countercl. ¶ 87.) As a result, "Defendants lost this business opportunity." (Countercl. ¶ 87.) These allegations, although not highly detailed, are sufficient for purposes of Rule 12(b)(6).

41. Next, Addison Whitney argues that its conduct was justified as a matter of law. According to Addison Whitney, Defendants are its competitors, and it is entitled to take action "to maintain its relationships with its own customers." (Mem. in Supp. 13 (emphasis omitted).)

42. The North Carolina Supreme Court has held that a defendant's "actions are privileged" when "acting for a legitimate business purpose." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988). This includes ordinary competition. Indeed, "[n]umerous authorities have recognized that competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Id.*

43. In this circumstance, the Court cannot conclude that Addison Whitney's conduct was justified, as a matter of law, due to a competitive privilege. Specifically, there is an open question as to whether Addison Whitney interfered with Defendants'

business relations "by means that are lawful." *Id.* The Court has held that Defendants' defamation claim may proceed, and Defendants have alleged that some third parties chose not to do business with Defendants because of the allegedly defamatory press release and AdWords campaign. As a result, Defendants have sufficiently alleged that Addison Whitney acted without justification. *See K&M Collision, LLC v. N.C. Farm Bureau Mut. Ins. Co.*, 2017 NCBC LEXIS 109, at \*23 (N.C. Super. Ct. Nov. 21, 2017) ("[D]ismissal at the pleading stage is inappropriate where questions of fact remain as to Defendants' justification for interfering with Plaintiff's business relations."); *see also Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1020 (D. Idaho 2010) ("An act that is independently wrongful, such as defamation, shows an absence of justification.").

44. For these reasons, the Court denies Addison Whitney's motion with respect to the claim for tortious interference with prospective economic advantage.

## D. Section 75-1.1

45. Finally, Addison Whitney asks the Court to dismiss Defendants' section 75-1.1 claim "[b]ecause [if] Defendants' abuse of process, defamation, and tortious interference claims fail to state a claim upon which relief can be granted, so too does their unfair and deceptive trade practices claim." (Mem. in Supp. 16.) Thus, according to Addison Whitney, if one of Defendants' claims for abuse of process, defamation, or tortious interference with prospective economic advantage survives, then Defendants' section 75-1.1 claim must also survive. Having denied the motion to dismiss the claims for defamation and tortious interference, the Court also denies the motion to dismiss Defendants' section 75-1.1 claim.

## III.
## CONCLUSION

46. For these reasons, the Court **GRANTS in part** and **DENIES in part** Addison Whitney's Rule 12(b)(6) motion as follows:

a. The Court grants the motion as to the claim for abuse of process. The claim is **DISMISSED with prejudice**.

b. The Court **DENIES** the motion as to the claim for defamation to the extent it is based on allegations related to Addison Whitney's press release and Google AdWords campaign.

c. The Court **DENIES** the motion to dismiss the claims for tortious interference with prospective economic advantage and unfair or deceptive trade practices.

This the 1st day of December, 2017.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases